## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

**SANCHEZ & DANIELS**
**MANUEL SANCHEZ, JOHN DANIELS,**
**TIMOTHY HOFFMAN, EDWARD ORDONEZ,**
**JOSEPH BONACCORSI, DIANE HUNTLEY,**
**and MARY OBRZUT,**
 vs.

**KORESKO & ASSOCIATES, P.C.,**
 and **JOHN KORESKO**
vs.

**SANCHEZ & DANIELS**
**MANUEL SANCHEZ, JOHN DANIELS,**
**TIMOTHY HOFFMAN, EDWARD ORDONEZ,**
**JOSEPH BONACCORSI, DIANE HUNTLEY,**
and **MARY OBRZUT,**

and
**CLINTON KRISLOV**
and
**WAYNE BURSEY**
and
**DANIEL CARPENTER**
and
**MOLLY CARPENTER**
and
**STEP PLAN SERVICES, INC.**
and
**CHARLES WEBSTER**
and
**FREEBORN AND PETERS, P.C.**
and
**RICHARD ORDER**
and
**AXINN VELTROP & HARKRIDER, LLP**
and
**JACK E. ROBINSON**
and
**BENNISTAR INSURANCE GROUP, INC.**
and
**BENISTAR 419 PLAN SERVICES, INC.**
and
**BENISTAR EMPLOYER SERVICES TRUST**

: **No. 04-CV-5183**
:
: **Judge Matthew F. Kennelly**
: **Room 2103**
:
:
:
:
:
:

**FILED**

MAR - 9 2005

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

CORPORATION
and
BENISTAR LTD.
and
MELLON TRUST OF NEW YORK
and
BARNES & THORNBURG
and
TEPLITZKY and COMPANY, P.C.
and
JEFFREY TEPLITZKY
and
PRUDENTIAL INSURANCE COMPANY
OF AMERICA
and
SONNENSCHEIN, NATH & ROSENTHAL, LLP
and
THOMAS J. MURPHY
CLU & ASSOCIATES
and
O'HAGEN SMITH & AMUNDSEN, LLC
and
METLIFE, INC.
and
GRIPPO & ELDEN
and
NATIONAL LIFE INSURANCE CO.
and
HOLLAND & KNIGHT, LLC
and
HARTFORD LIFE INSURANCE COMPANY
and
SIDLEY AUSTIN BROWN & WOOD, LLP
and
AKIN GUMP STRAUSS HAUER & FELD, LLP
and
AMERICAN FINANCIAL BENEFIT
INSURANCE COMPANY
and
NEW YORK LIFE INSURANCE COMPANY
and
METROPOLOLITAN LIFE INSURANCE CO.
and
US TRUST OF NEW YORK
and
GOLDBERG KOHN BELL BLACK

ROSENBLOOM & MORITZ, LTD.
and
TRAVERLERS INDEMNITY COMPANY OF
CONNECTICUT
and
IRA SILVERSTEIN
and
THORP REED & ARMSTRONG, LLC



04 cv 5183
Judge Kennelly
**FILED** LAL
MAR - 9 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

---

### Answer To Complaint And Affirmative Defenses And Counterclaims And Third Party Complaint and Additional Claims of Defendants Koresko & Associates, P.C. And John Koresko

The Defendants, Koresko and Associates, P.C. and John Koresko, and respond to the Plaintiffs' Complaint For Declaratory Relief and further submit affirmative defenses, counterclaims and cross-claims, and joinder of parties as follows:

### PARTIES

:

Allegation 1.  SANCHEZ & DANIELS is a law firm partnership, organized and existing under the laws of the state of Illinois, with its principal place of business located in Cook County, Illinois.

1.  Admitted that Sanchez and Daniels is a law firm partnership with a place of business in Cook County, Illinois.  As to all other averments in this paragraph responding Defendants are without sufficient information to determine the accuracy thereof and deny the same and demand proof at the time of trial.

Allegation 2:  MANUEL SANCHEZ is a natural person, a citizen of the

state of Illinois, licensed to practice law in the state of Illinois, and a general partner in the law firm of SANCHEZ & DANIELS.

2. Admitted.

Allegation 3: JOHN DANIELS is a natural person, a citizen of the state of Illinois, licensed to practice law in the state of Illinois, and a general partner in the law firm of SANCHEZ & DANIELS.

3. Admitted.

Allegation 4: TIMOTHY HOFFMAN is a natural person, a citizen of the state of Illinois, licensed to practice law in the state of Illinois, and a general partner in the law firm of SANCHEZ & DANIELS

4. Admitted

Allegation 5: The law firm of SANCHEZ & DANIELS is owned 100% by the three general partners, MANUEL SANCHEZ, JOHN DANIELS and TIMOTHY HOFFMAN. The firm has other non-equity, non-ownership partners, each and every one of whom are citizens of the state of Illinois, and none of whom are citizens of Pennsylvania.

5. As to all averments in this paragraph responding Defendants are without sufficient information to determine the accuracy thereof and deny the same and demand proof at the time of trial.

Allegation 6: EDWARD ORDONEZ is a natural person, a citizen of the state of Illinois, licensed to practice law in the state of Illinois, and a non-equity, non-ownership partner in the law firm of SANCHEZ & DANIELS.

6. As to all averments in this paragraph responding Defendants are without sufficient information to determine the accuracy thereof and deny the same and demand proof at the time of trial.

Allegation 7: JOSEPH BONACCORSI is a natural person, a citizen of the state of Illinois~ licensed to practice law in the state of Illinois. At all times relevant herein he was a former equity partner in the law firm of SANCHEZ & DANIELS. Mr. Bonaccorsi ceased his tenure with the firm on or about February 1, 2003, and gave up all ownership interest in the firm at that time.

7. As to all averments in this paragraph responding Defendants are without sufficient information to determine the accuracy thereof and deny the same and demand proof at the time of trial.

Allegation 8: DIANE HUNTLEY is a natural person and citizen of the state of Illinois. At all times relevant she is and has been an employee of SANCHEZ & DANIELS.

8. As to all averments in this paragraph responding Defendants are without sufficient information to determine the accuracy thereof and deny the same and demand proof at the time of trial.

Allegation 9: MARY OBRZUT is a natural person and citizen of the state of Illinois. At all times relevant she is and has been an employee of SANCHEZ & DANIELS.

9. As to all averments in this paragraph responding Defendants are without sufficient information to determine the accuracy thereof and deny the same and demand proof at the time of trial.

Allegation 10: KORESKO & ASSOCIATES, P.C. is a professional corporation, organized and existing under the laws of the state of Pennsylvania, with its principal place of business located in Bridgeport, Pennsylvania.

10. Admitted.

Allegation 11: JOHN KORESKO is a natural person, a citizen of the state of Pennsylvania, licensed to practice law in the state of Pennsylvania, and licensed pro *hac vice* to practice law in the state of Illinois, and appear before the United States District Court for the Northern District of Illinois, in the case of *JOHN DAIVIELS, et al -vs- WAYNE BURSEY, et al,* case no. 03 CV 1550.

11. Admitted.

## JURISDICTION AND VENUE

Allegation 12: Jurisdiction is conferred pursuant to 28 USC 1332 (a) (1). All plaintiffs are diverse from all defendants. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

12. Responding Defendants incorporate by reference their Motion to Dismiss and Motion Pursuant To 28 USC §1404 (a) and accompanying memoranda and respectfully submit that notwithstanding the Court's denial of the same, the Court does not have jurisdiction.

Allegation 13: Venue is proper in the Northern District of Illinois because a substantial portion of the business dealings between the parties occurred in this District,

and the cause of action alleged herein relates to and arises out of those business dealings.

13. Denied. Defendants incorporate its prior answer and further state that venue is not proper in the Northern District of Illinois.

## UNDERLYING SUIT

Allegation 14: On or about September 1, 2002, the certain plaintiffs, Manuel Sanchez, John Daniels and Sanchez & Daniels retained John Koresko to serve as legal counsel for all of the plaintiffs in regard to the suit entitled *JOHNDANIELS, et al. -vs-WA YNE B URSEY, et al.* ("underlying suit")

14. Admitted in part and denied in part. It is admitted that Plaintiffs John Daniels, Manuel Sanchez and Sanchez and Daniels retained John Koresko. To the extent any averment contained in this paragraph is contrary to the terms of the engagement letter between the parties, it is denied. Attached hereto is a true and correct copy of the fee letter between Plaintiffs and Defendants.

Allegation 15: Prior to retaining Mr. Koresko, John Daniels, and Manuel Sanchez conferred with John Koresko in regard to the facts and circumstances which gave rise to the underlying suit. During these conferences, Mr. Koresko represented that he had extensive knowledge and experience in the subject matter of the Employee Retirement Income Security Act. (ERISA). He further represented that he is and was a sole practitioner, based in Pennsylvania.

15. Admitted in part and denied in part. It is admitted that the parties conferred. As to the other averments contained in this paragraph, the same do not accurately state the content of the exchange between the parties and is therefore denied as stated.

Allegation 16: Mr. Koresko further informed Mr. Daniels and Mr.

Sanchez that he [Koresko] lacked the associates, paralegals and support staff to properly manage and prosecute the underlying suit, and that he [Koresko would necessarily need to retain litigation counsel to assist him in the management and prosecution of the underlying suit.

16. Admitted in part and denied in part. It is admitted that the parties discussed management of the suit. As to the other averments, the same do not accurately reflect the exchange between the parties and the same is denied. By way of further answer, to the extent Plaintiffs make representations contrary to the agreement between the parties and plaintiffs' sworn testimony, the same are denied.

Allegation 17: Mr. Koresko further informed Mr. Daniels and Mr. Sanchez that he [Koresko] lacked the associates, paralegals and support staff to properly manage and prosecute the underlying suit, and that he [Koresko would necessarily need to retain litigation counsel to assist him in the management and prosecution of the underlying suit.

17. Denied. Defendants are without sufficient information to ascertain what Plaintiffs may have "understood". As to any averments concerning "agreement" the same are denied. The parties' agreement was reduced to writing and is attached hereto.

Allegation 18: Prior to retaining Mr. Koresko, Mr. Daniels and Mr. Sanchez expressly stated to Mr. Koresko that compensation for legal services would have to be on a "contingency fee" basis, and that the "contingency fee" had to include the legal services of both Mr. Koresko and whatever litigation counsel Mr. Koresko retained to assist him to manage and prosecute the underlying case. Under the "contingency fee" agreement discussed between the parties, it was understood and agreed that Mr. Koresko, and Koresko & Associates P.C. and such other litigation counsel who was retained by Mr.

Koresko, would be entitled to a fee only in the event that the clients, plaintiffs in this case, recovered damages in the underlying suit. It was expressly stated to Mr. Koresko by Mr. Sanchez that in no event would plaintiffs consider retaining Mr. Koresko on any basis other than a contingency fee agreement. -

18. Denied. The fee agreement is attached and speaks for itself. It is specifically denied that Plaintiffs prior to paying an initial retainer of $15,000 made oral statements that compensation was on a "contingency" basis. It is specifically denied that "it was understood" that Defendants herein and litigation counsel retained by defendants were retained on a contingent basis. By way of further answer, the alleged discussion as to any contingency arrangement did not transpire until one year after Defendants were retained and Plaintiffs attempted to re-negotiate the attached agreement when asked the remit payment for services rendered.

Allegation 19: On or about September 1, 2002, Mr. Koresko for himself and the other defendant agreed to represent the plaintiffs in the underlying suit, on a contingency fee basis, which contingency fee would compensate both defendants and such other litigation counsel as Mr. Koresko retained to assist him in the management and prosecution of the underlying suit.

19. Denied. By way of further answer the preceding paragraph is incorporated herein. Further, the attached letter of engagement reflects the terms.

Allegation 20: Thereafter, Mr. Koresko retained the law firm of Anderson Kill & Olick, of Philadelphia, Pennsylvania, ("Anderson Kill") to assist him as litigation counsel for the management and prosecution of the underlying suit.

20. Admitted. By way of further answer, Plaintiffs knew and approved of the retention of Anderson, Kill & Olick ("AKO"). Plaintiffs were also advised both by the attached agreement and directly by Defendants of their responsibility to pay AKO, other legal fees and costs.

Allegation 21 Both John Koresko and Anderson Kill are shown as counsel of record in the original underlying complaint filed in the United States District Court for the Eastern District of Pennsylvania, case no. 02 CV 8213. The original underlying suit was filed on or about December 2, 2002.

21. Admitted.

Allegation 22: On or about February 1, 2Q03, the original underlying suit was voluntarily dismissed.

22. Denied as stated. By way of further answer, the action was initially filed in the Eastern District of Pennsylvania(" EDPa") with the consent of the Plaintiffs and for the purpose of preserving all claims under the applicable statute of limitations. The voluntary dismissal in the EDPa which was approved by the Honorable Legrome Davis contingent on the promise by that Plaintiffs herein to protect the interests of the putative class by pursuing the allegation in the Complaint filed in Cook County, Illinois and subsequently removed to this Court

Allegation 23: On or about February 13, 2003, the underlying suit was refiled in the Circuit Court of Cook County, Law Division, case no. 03 L 001917.

23. Admitted.

Allegation 24: Both John Koresko and Anderson Kill served as counsel of record for plaintiffs in the refiled Cook County action.

24. Admitted.

Allegation 25: On or about March 3, 2003, the underlying suit was removed to United States District Court for the Northern District of Illinois, where it was given case no. 03 CV 1550, and assigned to the Honorable Matthew F. Kennelly.

25. Admitted.

Allegation 26: Both John Koresko and Anderson Kill served as counsel of record for plaintiffs in the removed federal court action.

26. Admitted.

Allegation 27: On or about June 12, 2003, Anderson Kill obtained leave of court to withdraw as counsel for plaintiffs in the underlying suit. As grounds for their motion to withdraw, Anderson Kill cited a "conflict of interest" for the firm arising from the firm's representation of one of the corporate defendants in the underlying suit, in matters unrelated to the underlying suit. This "conflict of interest" was not disclosed to any of the plaintiffs before Anderson Kill appeared for plaintiffs in any of the three complaints filed in the underlying suit.

27. Denied as stated. Anderson, Kill & Olick obtained leave of Court to withdraw as counsel after securing the consent of Plaintiffs. The remaining averments of this paragraph are not fully accurate and are denied. By way of further answer, the pleadings and transcript of the proceedings are the best evidence of the basis of Anderson Kill & Olick's withdrawal from the case and are incorporated by reference. In sum, although a potential conflict was identified, Plaintiffs' refusal to acknowledge its outstanding financial obligation to Anderson Kill & Olick was also a factor.

## BREACH OF CONTRACT

Allegation 28:  Thereafter, in breach of the parties' agreement, defendants John
Koresko and Koresko & Associates, P.C., have failed to retain litigation counsel to assist
them in the proper management and prosecution of the underlying suit.

28. Denied.  It is specifically denied that Defendants herein breached any
agreement with Plaintiff.  By way of further answer, after AKO withdrew as co-counsel,
Defendants made repeated efforts to secure acceptable litigation counsel, including
Clinton Krislov, Esquire.  Plaintiffs refused to approve any such counsel , especially Mr.
Krislov, or otherwise enter into fee agreements with proposed litigation counsel.
Eventually, Plaintiffs retained Mr. Krislov on terms unknown to Defendants and without
the involvement of Defendants herein except to the extent Defendants were ordered to
disclose information about the litigation. By way of further answer, the fee agreement
imposed on Plaintiffs the responsibility to secure local counsel at their expense, and
Plaintiffs chose to enter an appearance rather than hire outside counsel.

Allegation 29:  The defendants John Koresko and Koresko & Associates
are not competent to properly manage and prosecute the underlying suit without the
assistance of effective litigation counsel with knowledge and expertise in the field of
ERISA.

29.  Denied.  By way of further answer, Defendants herein made a full and
complete disclosure of the resources as well as areas of expertise of its firm and
requirement that before they would undertake any such representation, they would, of
necessity, associate with litigation counsel.  Plaintiffs' assertion that this constitutes a
breach of contract is without foundation as demonstrated by the attached agreement.

Furthermore, when Mr. Koresko attempted to withdraw subsequent to Mr. Krislov's entry into the case, Plaintiffs opposed Defendants' withdrawal. Plaintiffs in their opposition advised the Court that Mr. Koresko had a particular expertise and was needed to pursue Plaintiffs' claims. By way of further answer, Plaintiffs' signed a motion to admit Defendants to practice pro hac vice in this Court after AKO had given notice of resignation, and such motion affirmed the special expertise of Defendants.

Allegation 30: The defendants John Koresko and Koresko & Associates lack the resources to properly manage and prosecute the underlying suit without the assistance of effective litigation counsel with knowledge and experience in the field of ERISA.

30. Denied. The preceding paragraph is incorporated herein. By way of further answer, Defendants specifically deny that any breach occurred. Moreover, Plaintiffs herein have represented to this Court in the underlying proceeding that Mr. Koresko's ERISA and tax expertise was a basis for admission pro hac vice as well as a reason to deny any motion to withdraw. The need for litigation support was made clear to Plaintiffs and yet Plaintiffs refused to cooperate or abide by the terms of the engagement letter, thus imposing on Defendants an enormous burden to train Plaintiffs, their lawyer employees, Mr. Krislov, and otherwise shoulder responsibility for the litigation.

Allegation 31: As a consequence of the material breach of the parties' agreement by John Koresko and Koresko & Associates, and specifically, their failure to retain effective litigation counsel with knowledge and experience in the field of ERISA, the plaintiffs have been damaged as follows:

a.    Attorneys employed by SANCHEZ & DANIELS have been required to file their appearances in the underlying suit as counsel

of record, attend court hearings, respond to motions to dismiss, and perform other substantive legal services which John Koresko had promised to perform, either individually or. through litigation counsel retained by Mr. Koresko.

b.      On March 24, 2004, plaintiffs retained the law firm of Clinton Krislov & Associates ("Krislov") to serve as litigation counsel in the underlying suit. Plaintiffs have or will incur attorney fees for legal services performed by Krislov which John Koresko had promised to perform, either individually or through litigation counsel retained by Mr. Koresko.

31. Denied. It is specifically denied that any breach occurred. Plaintiffs involvement in the prosecution of the case in terms of court appearances, motion responses, and the like were undertaken by the Plaintiffs at their insistence as they refused to pay for litigation counsel to advance these matters or otherwise honor their agreement with Defendants herein. When Plaintiffs herein retained Mr. Krislov, Mr. Koresko pursued a Motion To Withdraw. However, Plaintiffs and Mr. Krislov insisted that he continue to represent them as well as the putative class in the underlying litigation. Plaintiffs as well as Mr. Krislov expressed to the Court their need to rely on Defendants' ERISA and tax expertise. By way of further answer, Defendants demonstrated extraordinary skill in identifying Plaintiffs' causes of action and remedies, properly pleading same, resisting dismissal and summary judgment, advancing the matter toward trial and otherwise constituting the primary cause of any desire by Plaintiffs' adversaries to settle. In further answer, Krislov refused to sign pleadings written by John Koresko after receiving Rule 11 threats from third party defendants Webster, Order and others thus further breaching Plaintiff's promise to provide local counsel

Allegation 32: On or about June 25, 2004, defendants filed theft motion to withdraw as attorneys of record for plaintiffs in the underlying suit.

32. Admitted.

Allegation 33: Defendants filed their motion to withdraw as counsel for plaintiffs, without the plaintiffs' authorization or consent.

33. Denied. By way of further answer, a conflict was created between Plaintiffs and Defendants by the filing of a lawsuit in the Eastern District of Pennsylvania entitled *Step Plan Services, Inc. v John Koresko, Koresko & Associates and Sanchez and Daniels, et al*, U.S.D.C., E.D. Pa. Civil Action No. 04-2560. Defendant herein was under a professional duty to bring this to the attention of the Court and to seek to withdraw. In addition Plaintiffs refusal to acknowledge the terms of engagement, and attempt to re-negotiate the original agreement was sufficient basis to seek leave to withdraw. Authorization or consent to file was not required.

## ACTUAL CONTROVERSY BETWEEN THE PARTIES

Allegation 34: An actual controversy has arisen between the plaintiffs and defendants concerning the compensation, if any, to which the defendants are entitled for legal services rendered in the underlying suit.

34. Denied as stated. There is a dispute between the parties. It is denied that Defendants have acted in any manner that gives rise to any claim against them as alleged by Plaintiffs.

Allegation 35: John Koresko has made demand upon the plaintiffs for payment of a lump sum dollar amount in compensation for legal services, and has threatened to file suit against the plaintiffs is they fail to meet his demands.

34. Denied. John Koresko has made demand for payment for services performed. It is denied that Mr. Koresko has improperly communicated to Plaintiffs a "threat" for failure to meet "demands". The counterclaim below is incorporated herein by way of further answer.

Allegation 36: John Koresko has asserted a lien against the proceeds of any recovery made by the plaintiffs in the underlying suit.

36. Denied as stated. By way of further answer, Defendants incorporate by reference the Motion and Lien of John Koresko as filed in the matter of *Sanchez and Daniels, et al. v Bursey, et al.,* U.S.D.C., N. D. Ill. N0. 03-cv-1550.

Allegation 37: Plaintiffs have refused to pay the amounts demanded by Mr. Koresko, and assert that he is in material breach of the parties agreement, and as a consequence not entitled to contract damages nor *quantum meruit.*

37. Denied. By way of further answer, Plaintiffs herein have refused after the exhaustion of the initial retainer to pay any costs or fees. There has been no breach by Defendant. The counterclaim set forth below is incorporated herein.

Allegation 38: In the alternative, defendants assert that any compensation to which defendants are entitled by way of *quantum meruit* must be reduced by the value of legal services performed by SANCHEZ & DANIELS, and by the Krislov law firm, and all other legally relevant criteria.

38. Denied. The counterclaim, cross claim and third party complaint set forth below are incorporated by way of further answer.

Allegation 39: This court is empowered pursuant to 28 USC 2201 to enter an order declaring the rights and legal obligations of the parties, in cases of actual

controversy.

39. Denied.

Allegation 40: An actual controversy exists here with respect to:

    a.    whether defendants have materially breached the attorney client contract;

    b.    whether and to what extent defendants are entitled to compensation for legal services rendered in connection with the underlying suit;

    c.    whether and to what extent defendants are entitled to compensation, if any, according to contract or *quantum meruit* for services rendered.

40. Denied. There is a controversy. However, the actual basis of that controversy is set forth in the counter claims and third party complaint set forth below.

## AFFIRMATIVE DEFENSES.

### First Affirmative Defense

This Court does not have subject matter or personal jurisdiction

### Second Affirmative Defense

Venue is not proper in the Northern District of Illinois.

### Third Affirmative Defense

The Complaint should be dismissed as there is a duplicative action

pending in the Court of Common Pleas of Montgomery County, Pennsylvania

### Fourth Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

### Fifth Affirmative Defense

The Claims are not justicable under the Declaratory Judgment Act as the

Complaint seeks affirmative legal and equitable relief.

### Sixth Affirmative Defense

The Claims are barred by the statute of limitations or by the doctrine of laches.

### Seventh Affirmative Defense

The Claims are barred by waiver and estoppel.

### Eighth Affirmative Defense

The Claims are barred by judicial estoppel.

### Ninth Affirmative Defense

The Claims are barred by the doctrine of illegality as the product of perjury, theft of services, extortion, fraud and conspiracy to aid and abet violation of ERISA and RICO.

### Tenth Affirmative Defense

The Claims are barred by the rules of professional conduct.

### Eleventh Affirmative Defense

The Claims are barred by Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. §1927.

### Twelfth Affirmative Defense

The Claims are barred by the doctrine of unclean hands.

### Thirteenth Affirmative Defense

The claims are barred by the doctrine of set-off and equitable recoupment.

### Fourteenth Affirmative Defense

The Claims are barred as to John Koresko, Esquire, personally, under the fiduciary shield doctrine as he was at all times acting as an officer and director of Koresko and Associates, P.C.

## ADDITIONAL FACTS AS TO COUNTERCLAIMS,
## THIRD PARTY COMPLAINT

1. Defendants incorporate by reference all of the pleadings, Memoranda, orders and judicial opinions filed and all evidence adduced in the case of *Sanchez and Daniels, et al v Bursey, et al*, U.S.D.C., N.D. Ill. No. 03-1550. The actions of Sanchez and Daniels and the Third Party Defendants constitutes aiding and abetting the ERISA violations alleged in the action at 03-CV-1550. The RICO allegations are incorporated and it is alleged that Sanchez and Daniels and the Third Party Defendants conspired to commit RICO violations against John Koresko and Koresko and Associates, P.C. The conduct of Sanchez and Daniels, Benistar, and others was in furtherance of Benistar's practice to protect its RICO enterprise. The Settlement reference in this fee litigation and the Philadelphia strike suit were pursued to protect Benistar, STEP Services and other Defendants form having their RICO enterprise disbanded by the class action litigation

2. Plaintiffs, having engaged the services of Koresko and Associates, P.C., agreed to file the first pleadings in the underlying action in Philadelphia in 2002. That initial pleading contained class action allegations and asserted breach of fiduciary duty and other charges. John Daniels verified the Complaint and stated he was an appropriate class representative. Based in part on the initial pleading, Judge Legrome Davis of the Eastern District of Pennsylvania issued a Temporary Restraining Order as to the defendants Bursey, et al as named in the action docketed in this Court at N0. 03-cv-1550.

3. The Plaintiffs herein consented to the initial filing in Philadelphia and verified its accuracy. The Plaintiffs, in part, initiated the case in EDPa to ensure the claim was timely. Subsequent to the successful TRO proceeding, filed at Plaintiff's insistence on an emergency basis, a letter of engagement/fee agreement was sent to Plaintiffs. That fee

letter (Exhibit "1 ") dated December 3, 2002 sets forth the term of representation
including payment of an initial retainer of $15,000.00. Plaintiffs forwarded the $15,000
retainer shortly thereafter and never objected to the contents of the letter.

4. Defendant herein continued to render services to Plaintiffs. Messers. Sanchez
and Daniels desired to have the case proceed in Chicago. Judge Davis in considering a
motion for voluntary dismissal required that the Plaintiffs herein assure the Court that the
interests of the putative class would not be harmed by permitting voluntary dismissal of
the EDPa case. Receiving this assurance Judge Davis permitted termination of the case.
Immediately thereafter Mr. Daniels verified a complaint that was filed in the Cook
County Illinois Courts. This Complaint contained class allegations and set forth the
malfeasance of the various defendants named therein.

5. The action was then removed to the Northern District of Illinois. Prior to this
removal Defendant herein and Anderson Kill & Olick acted as counsel for the Plaintiffs.
The engagement of Anderson Kill and Olick was known to the Plaintiffs herein and no
objection was ever made at the time services were performed. Anderson Kill and Olick
resigned from the case without any objection by Sanchez and Daniels. The resignation of
Anderson Kill & Olick was based on a potential conflict with a client of AKO. Sanchez
and Daniels and the other Plaintiffs voluntarily pursued the case on behalf of themselves
and those similarly situated.

6. As agreed, Mr. Koresko continued to identify firms that could serve as local
counsel in Chicago. The Plaintiffs rejected every suggestion. In May 2003, Mr. Koresko
suggested retention of Mr. Krislov and his firm. The Plaintiffs made inquiry as to Mr.
Krislov's background and then specifically instructed Mr. Koresko not to contact Krislov

or in anyway involve Krislov in the case.

7. In July-August 2003, Sanchez and Daniels attempted to settle with the STEP/Benistar parties directly. Sanchez and Daniels, according to testimony in the underlying case, were advised by the STEP/Benistar parties that a condition of settlement was submission of a letter that stated that the lawsuit was not Sanchez's or Daniels' idea and that they had been misinformed by John Koresko and but for the misinformation, they would not have sued. Sanchez and Daniels refused to accept these conditions and testified that the conditions were not true.

8. STEP/Benistar lawyers wrote to Mr. Koresko's clients, Plaintiffs herein, and warned that they "would pay dearly for being in league with Koresko and {Anderson, Kill & Olick attorney}Virginia Miller. Further Plaintiffs were threatened that the damages for suing Benistar, et al. would be in the millions.

9. Koresko and Associates, P.C. continued as counsel to Plaintiffs and successfully defended Motions to Dismiss and Motions For Summary Judgment. In addition, John Koresko in formulating the strategy to advance this case made vital contributions by identifying structural flaws in the STEP Trust; utilizing his knowledge of the operations of the STEP trust and access to key witnesses and documents including the concealment of the adverse *Costal Neurological* case and Daniel Carpenter's admissions in a Treasury Department proceeding as to the manner STEP was acquired. Moreover it was John Koresko who noted the relationship between the acquisition of STEP by Benistar and the demutalization proceeds of Prudential. It was John Koresko who identified the breaches of fiduciary duty by all of the Defendants in the underlying cause. Such breaches include by are not limited to STEP's attempt to obtain money from

Sanchez and Daniels and other class plaintiffs and use of flawed "releases" as well as the use of unsuitable insurance products to fund benefits. Furthermore, Mr. Koresko used his prior experience in RICO litigation to identify and successfully allege RICO causes of action.

10. In early 2004 Plaintiffs herein made a direct arrangement with Clinton Krislov, Esq. Sanchez and Daniels gave specific instructions to Koresko and Associates and John Koresko to work with Mr. Krislov. Further, Sanchez and Daniels demanded that Koresko turn over all of his intellectual property developed in connection with the case and to teach Mr. Krislov and his associates the ERISA, tax, RICO and insurance law necessary to prosecute the case.

11. John Koresko complied with the instructions given by Sanchez and Daniels. As these matters and the underlying case were proceeding, Mr. Koresko continued to provide services consistent with the fee agreement sent to Plaintiffs herein in December 2002. In June 2003, almost a year after accepting services under the fee letter of December 2002, John Daniels informed Mr. Koresko that there was "no meeting of the minds" and asserted that Koresko and Associates would only be paid "statutory fees" under the class action.

12. Understandably this turn of events caused great concern to Mr. Koresko and he sent correspondence in June 2003 demanding Plaintiffs commitment to the fee agreement. While this fee issue continued, the Defendants in the underlying case began their offensive. The STEP/Benistar defendants implemented the strategy of filing strike suits against Mr. Koresko and his clients including Plaintiffs herein claiming commercial disparagement and related harm. Those cases are:

Step Plan Services, Inc. v Koresko & Associates, P.C., Sanchez & Daniels, et al, U.S. District Court-Connecticut C.A.#02-CV-1711

Step Plan Services, Inc., v Koresko & Associates, P.C., Sanchez & Daniels, et al, U.S. District Court-E.D. Pa. # 04-CV-2560

Arrow Drilling, et al v Daniel Carpenter, et al U.S. District Court-E.D. Pa. C. A. #02-CV-9097

Benistar 419 Plan Services, Inc. v Arrow Drilling, et al. U.S. District Court-Connecticut C.A. #03-CV-1680

The Connecticut actions have been dismissed. The Arrow Drilling matter is before the Third Circuit Court of Appeals and the STEP v Koresko case has been remanded to the Philadelphia Court of Common Pleas.

13. The clear intent of the Defendants was to create expense and conflicts between Plaintiffs and Mr. Koresko and force termination of the underlying RICO case herein on terms favorable to the defendants therein.

14. Although the fee dispute was ongoing, John Koresko continued to produce work product and act in the best interests of his clients. This included an initial motion for appointment of a receiver filed in June 2004. In March 2004 Mr. Krislov formally entered his appearance on behalf of the Plaintiffs in the underlying cause.

15. On June 24, 2004, Defendants herein filed their motion to withdraw as counsel for Sanchez and Daniels. Mr. Krislov and Sanchez and Daniels opposed this motion claiming Koresko's participation was essential. Plaintiffs and Krislov further alleged in papers supporting their motion for class certification that Koresko was highly skilled and qualified to be class counsel. Yet, despite these claims Sanchez and Daniels continued their attempt to renege on the original letter of engagement submitted in December 2002.

16. Ultimately the Motion to withdraw was never decided given the ongoing developments in the case. After other negative information came to light about the STEP/Benistar Defendants, Koresko and Associates filed a second motion for the appointment of a receiver. The original motion had been denied as the Court did not find there was evidence of record that connected Benistar and STEP. That changed in light of an affidavit of an IRS agent and other material in an IRS Memorandum filed in the District Courts of both New York and Philadelphia. In addition, one of STEP's attorneys, Ira Silverstein made representations in pleadings in other cases that STEP and Benistar were "sister companies".

17. For reasons that are known to Mr. Krislov, rather than enthusiastically support a very strong motion for receivership and bolster the position of Plaintiffs and the putative class, he entered into negotiations with the Defendants who demanded that Krislov and Plaintiffs disavow Koresko and any actions by him.

18. Although Mr. Krislov in a letter to Mr. Koresko admitted that Mr. Koresko was the driving force behind the case and offered to pay half of the yet to be determined fee, he acted along with Sanchez and Daniels in complete disregard of any duty owed to Mr. Koresko and the putative class. Koresko was effectively excluded from any settlement discussions and no thought or effort was given to have any settlement address the rights of the putative class.

20. After settlement negotiations yielded an agreement as to Sanchez and Daniels only, it was the intent of Plaintiffs herein and Mr. Krislov and all of the Defendants in the underlying case to prevent Mr. Koresko from learning the settlement amount or any of

the terms of the settlement despite the fact that he had a property interest in the proceeds and his position in strike suit litigation was affected.

21.  The *quid pro quo* of the settlement that is of particular note is the provision that includes Sanchez and Daniels release from the Philadelphia lawsuit in which they were alleged to have conspired with Koresko to defame the STEP defendants. A further *quid pro quo* was litigation of this matter in Chicago

22.  Plaintiffs and Mr. Krislov now as a further effort to secure all settlement funds for themselves advance this specious declaratory relief action to avoid paying just compensation for services rendered by Mr. Koresko, to protect the RICO enterprise they identified and to suborn the ERISA violations they 'avowed' throughout the case at 03-cv-1550.

23.  The Plaintiffs herein by entering into the pending settlement have joined all of the Defendants in the underlying action in an ongoing scheme to "disavow" Koresko and expose him to the need to defend a strike suit.  More importantly, Plaintiffs herein now join all the Defendants in the underlying case in a scheme to deprive the putative class its day in court and just compensation for their losses.

24.  The Plaintiffs herein, by entering into the agreements with the STEP/Benistar Defendants and others, have deprived Koresko of property rights above and beyond any interest in the proceeds of settlement.

25.  Upon information and belief, it is averred that Plaintiffs have engaged in purposeful conduct with the intent to defame and disparage John Koresko and others in order to secure the settlement funds in derogation of their duties to Mr. Koresko and the class whom they promised to protect and have now abandoned.

## COUNTERCLAIMS

### COUNT I
### BREACH OF CONTRACT
### KORESKO and ASSOCIATES, P.C. and JOHN KORESKO v SANCHEZ & DANIELS, MANUEL SANCHEZ, JOHN DANIELS, TIMOTHY HOFFMAN, EDWARD ORDONEZ, JOSEPH BONACCORSI, DIANE HUNTLEY, and MARY OBRZUT

26. All of the preceding paragraphs are incorporated by reference.

27. Messers Sanchez and Daniels acting on their own behalf and as the agent of all other Plaintiffs herein retained Defendant/Counterclaim Plaintiff consistent with the terms set forth in the engagement letter of December 2, 2002.

28. As agreed between the parties, John J. Koresko, Esq. on behalf of Koresko and Associates, P.C. initiated the underlying cause of action.

30. Prior to December 2, 2002, Koresko and Associates, P.C. and AKO provided substantial legal services to all Plaintiffs. Specifically obtaining a temporary restraining order against the defendants in the underlying action. This was done prior to drafting of the engagement letter because of emergency services demanded by the Plaintiffs.

31. Thereafter, Plaintiffs herein continued to receive legal services from Defendant/Counterclaim Plaintiff and benefited from Koresko's intellectual property and expertise as it advanced their claims, and Plaintiffs cause Koresko to engage AKO on their behalf.

32. The underlying case, as noted above, was voluntarily dismissed in the Eastern District of Pennsylvania and commenced in Cook County, Illinois before its removal to this Court. Plaintiffs herein continued to express their wish that John Koresko continue as counsel and supported Koresko's admission *pro hac vice.*

33. The underlying case, 03-CV-1550, continued in this Court and Mr. Koresko was admitted as counsel. As set forth in the letter of engagement, the firm of Anderson Kill & Olick was hired as associate counsel both in the proceedings in the Eastern District of Pennsylvania and in the Illinois case. Both Koresko and Anderson Kill & Olick performed valuable and extraordinary services without any objection from Plaintiffs herein.

34. In November 2003 and after nearly a year of accepting services and utilizing the intellectual property of Mr. Koresko, and AKO, the Plaintiffs herein took the posture that the fees generated by the work performed by associate counsel were a cost to be assumed by Mr. Koresko and that the fee arrangement was a contingency arrangement.

35. Faced with Sanchez and Daniels' attempt to repudiated the December 2002 agreement and the potential conflict created by the above noted "strike suits", Koresko submitted a motion to withdraw for the Court's consideration, and this motion was vigorously opposed by the Plaintiffs herein.

36. By this point Plaintiffs had retained Mr. Krislov and instructed Mr. Koresko to educate and work in conjunction with him. The above described Motion for Appointment of a Receiver and For Injunction was drafted by Koresko and filed by an employee of Krislov. It was at this point Plaintiffs and Mr. Krislov, over the strenuous objection of Mr. Koresko, sought to fashion a settlement of their own claims with the various defendants. A challenge to the validity of the settlement is currently pending in the United States Court of Appeals for the Seventh Circuit.

37. Plaintiffs herein entered into a valid agreement for legal services and associated fees and costs with Koresko and Associates, P.C. Pursuant to that agreement

Plaintiff received the benefit of those services and use of intellectual property of Counter-claimant and AKO. Moreover, prior to the initiation of this suit, Plaintiffs expressed their satisfaction with services rendered in deposition testimony and through Mr. Krislov in the Motion for Class Certification and in the response to the Motion to withdraw.

38. As a direct consequence of the services performed by Counter-claimant, the Plaintiffs were able to secure for themselves a significant monetary settlement.

39. In breach of the agreement, Plaintiffs have refused to acknowledge their financial obligation to Counter-claimant.

40. Counter-claimant asserts that as a direct consequence of this breach he has incurred economic loss in excess of $350,000.00 in legal fees and a minimum of $50,000.00 in costs, including billings to Koresko by AKO

41. Counter-claimant requests the entry of judgment in its favor and against the Plaintiffs jointly and severally in an amount to be determined at the time of trial.

## COUNT II
## UNJUST ENRICHMENT
### KORESKO AND ASSOCIATES, P.C. and JOHN KORESKO v SANCHEZ AND DANIELS, MANUEL SANCHEZ, JOHN DANIELS, TIMOTHY HOFFMAN, EDWARD ORDONEZ, JOSEPH BONACCORSI, DIANE HUNTLEY, and MARY OBRZUT

42. All of the preceding paragraphs are incorporated by reference.

43. All of the Plaintiffs herein have realized economic benefits and advantage as a direct result of the legal services provided by Defendant/Counter-claimants.

44. All of the Plaintiffs herein have realized economic benefit and advantage as a direct result of the use of the unique intellectual property of the Defendant/ Counter-claimant, John Koresko.

45. All of the Plaintiffs have obtained these benefits and have refused to compensate Defendants for the services rendered or the property used.

46. To permit Plaintiffs to retain these benefits without paying compensation for services or use of property constitutes an unjust enrichment.

47. Counter-claimants request the entry of judgment in its favor and against the Plaintiffs jointly and severally in an amount to be determined at the time of trial.

## COUNT III
## CONVERSION
### KORESKO AND ASSOCIATES, P.C. and JOHN KORESKO v SANCHEZ AND DANIELS, MANUEL SANCHEZ, JOHN DANIELS, TIMOTHY HOFFMAN, EDWARD ORDONEZ, JOSEPH BONACCORSI, DIANE HUNTLEY, and MARY OBRZUT

48. All of the preceding paragraphs are incorporated herein.

49. During the course of Koresko and Associates, P.C. and John Koresko's professional relationship with the Plaintiffs, unique intellectual property was developed. Said property included but was not limited to the application of federal racketeering statutes to ERISA violations; trust structure and flaws therein; discovery formats, ERISA application to the claims; research and internal memoranda.

50. When the Plaintiffs retained Clinton Krislov, Esquire, they directed that Defendants/Counter-claimants make available all of the intellectual property developed and act as "co-counsel". Plaintiffs it is believed had no intention of compensating Koresko and Associates, P.C. and/or Mr. Koresko for the use of this property or services rendered.

51. Through the direct use of this property and its successful application in defeating summary judgment motions, Plaintiffs as well as Mr. Krislov realized an advantage which resulted in a direct economic benefit.

52. In the process of achieving economic benefits, Plaintiffs intentionally excluded Defendants/Counter-claimants from the case settlement process and now attempt to avoid compensation to Mr. Koresko for the use of his property.

53. Plaintiffs have converted this property to their own use without prior authorization and for the purpose of obtaining economic benefit.

54. Counter-claimants request the entry of judgment in its favor and against the Plaintiffs jointly and severally in an amount to be determined at the time of trial.

## COUNT IV
## QUANTUM MERUIT
**KORESKO AND ASSOCIATES, P.C. and JOHN KORESKO v SANCHEZ AND DANIELS, MANUEL SANCHEZ, JOHN DANIELS, TIMOTHY HOFFMAN, EDWARD ORDONEZ, JOSEPH BONACCORSI, DIANE HUNTLEY, and MARY OBRZUT**

55. All of the preceding paragraphs are incorporated herein by reference.

56. In the alternative, Defendants/Counter-claimants assert that even in the absence of a finding that the parties entered into a specific agreement for fees and services, Koresko and Associates and John Koresko are entitled to compensation for the time and costs expended on behalf of the Plaintiffs herein.

57. Compensation under such a circumstance would be based on a quantum meruit basis with fees being calculated on an hourly basis at the market rate for attorneys

with like expertise and experience. Costs would be based on a dollar for dollar

reimbursement.

58.   Counter-claimants request the entry of judgment in its favor and against the

Plaintiffs jointly and severally in an amount to be determined at the time of trial.

### COUNT V
### BREACH OF FIDUCIARY DUTY
### KORESKO AND ASSOCIATES, P.C. and JOHN KORESKO  v SANCHEZ AND DANIELS, MANUEL SANCHEZ, JOHN DANIELS, TIMOTHY HOFFMAN, EDWARD ORDONEZ, JOSEPH BONACCORSI, DIANE HUNTLEY, and MARY OBRZUT

59. All of the preceding paragraphs are incorporated herein by reference.

60.  When Plaintiffs retained Defendants, it was clear that the case would be

pursued as a class action. (See attached Fee Letter)

61.  Plaintiffs Sanchez and Daniels acknowledged under oath in their respective

depositions in the underlying case their intention to continue as the class representatives.

62.  Plaintiffs knew that Defendants herein would not have undertaken

representation in the absence of a commitment to act as class representative.

63.   In accepting legal services under the engagement letter and pursuing a class

action certification, Plaintiffs and Defendants became joint participants in the class action

venture.  In doing so, the parties owed a duty of loyalty to one another.  That duty by its

very nature required that neither party act in a way to interfere with the class action or

damage any putative class members or interfere with Koresko's ability to earn

compensation.

64.   Despite the duty of loyalty as recognized in the common law and in the

development of class action case law, the Plaintiffs herein acted in complete breach of

that duty. Apart from their duties to the putative class, the Plaintiffs herein abandoned their duty of loyalty to Koresko. Whether or not the class was ever certified, there exited a duty to the co-participant in the venture.

65. In particular, the Plaintiffs herein breached their duty to Koresko by refusing to honor the terms of the agreement and thereafter by entering into agreements with the Benistar and other Defendants in the underlying litigation. Part of the agreement with the Benistar parties was the dismissal of Sanchez and Daniels as defendants in the punitive strike suit in the Eastern District of Pennsylvania and payment to Sanchez and Daniels an undisclosed amount. By doing so, Sanchez and Daniels and all the Plaintiffs herein assisted the Benistar parties in pursuing retaliatory actions against Defendants Koresko and Associates, P.C. and John Koresko.

66. In addition to the conduct described above, the Plaintiffs herein caused documents to be filed in the underlying litigation purportedly "disavowing" certain actions taken by Koresko and Associates, P.C. and John Koresko. These documents were filed at the behest of the Benistar parties and were clearly aimed at enhancing the strike litigation as well as at destroying any putative class formation in the Illinois litigation.

67. In taking these actions as well as other acts, the Plaintiffs herein joined their former adversaries and now are part of the Benistar parties campaign to retaliate against Koresko or any party challenging the management of trust funds by Benistar and its sister company STEP Services, Inc.

68. As a direct consequence of these breaches of fiduciary duty, Koresko and Associates and John Koresko, Esquire, in his own right and on behalf of the putative

class, have been caused to loose the opportunity to proceed on behalf of the class and to obtain for the class and for Counterclaim Plaintiffs just compensation.

69. Counterclaim Plaintiffs request the entry of judgment in their favor and Against the Plaintiffs jointly and severally in an amount to be determined at the time of trial.

**COUNT VI**
**CONSPIRACY**
**KORESKO AND ASSOCIATES, P.C. and JOHN KORESKO v SANCHEZ AND DANIELS, MANUEL SANCHEZ, JOHN DANIELS, TIMOTHY HOFFMAN, EDWARD ORDONEZ, JOSEPH BONACCORSI, DIANE HUNTLEY, and MARY OBRZUT**

70. All of the preceding paragraphs are incorporated by reference.

71. The Plaintiffs herein in breaching their duty of loyalty to Defendants herein have taken affirmative steps in connection with the pending action in Pennsylvania to assist and act in concert with their former adversaries in the prosecution of a commercial defamation case against Defendants herein and others. Plaintiffs were originally target defendants in the Pennsylvania action.

72. The nature of the action and the conduct of the Benistar parties is more particularly set forth in the Third Party Complaint below. Plaintiffs herein have facilitated this baseless action in derogation of their duties to Defendants.

73. In their own self-interest, Plaintiffs have secured releases and have been dismissed as parties while assisting in the prosecution of this frivolous strike suit and other defamatory conduct of Benistar, STEP Services and other related entities or persons.

74. In acting as described above and complying with the settlement conditions demanded by Benistar and other Defendants in connection with the underlying case and the Pennsylvania action, Plaintiffs have joined the named defendants and have conspired with them in interference with Koresko's business relations, misuse of STEP Plan trust funds, breach of fiduciary duty, abuse of process and all other acts described below as to any defendant joined herein.

75. As a direct consequence of these acts, Counterclaim Plaintiffs have sustained economic loss for fees and costs and other damages the full extent of which will be presented at trial.

76. Counterclaim Plaintiffs request the entry of judgment in its favor and against the Plaintiffs jointly and severally in an amount to be determined at the time of trial.

**COUNT VII**
**AIDING AND ABETTING**
**KORESKO AND ASSOCIATES, P.C. and JOHN KORESKO v SANCHEZ AND DANIELS, MANUEL SANCHEZ, JOHN DANIELS, TIMOTHY HOFFMAN, EDWARD ORDONEZ, JOSEPH BONACCORSI, DIANE HUNTLEY, and MARY OBRZUT**

77. All of the preceding paragraphs are incorporated by reference.

78. In acting as described above and complying with the Benistar and Institutional parties' settlement conditions in connection with the underlying case and the Pennsylvania action Plaintiffs have joined these named defendants and have aided and abetted in the interference with business relations, misuse of trust funds, breach of fiduciary duty, abuse of process and all other acts described below as to any defendant joined herein.

79. As a direct consequence of these acts Counterclaim Plaintiffs have incurred economic loss.

80. Counterclaim Plaintiffs request the entry of judgment in its favor and against the Plaintiffs jointly and severally in an amount to be determined at the time of trial.

## THIRD PARTY COMPLAINT
### KORESKO & ASSOCIATES, P.C. and JOHN KORESKO v CLINTON KRISLOV and KRISLOV & ASSOCIATES, Ltd.
### COUNT I
### BREACH OF FIDUCIARY DUTY

81. All of the preceding paragraphs are incorporated by reference

82. Third Party Defendant Clinton Krislov, Esquire acted in concert with the Counter-claim Defendants in committing the acts complained of herein.

83. Third Party Defendant Krislov and Associates, Ltd.., is a professional corporation engaged in the practice of law with its professional office at 20 N. Wacker Drive, Chicago, Illinois 60606. At all times pertinent Clinton Krislov acted as the agent of Krislov and Associates.

84. Third Party Defendant Clinton Krislov, Esquire is an attorney licensed to practice law in the State of Illinois and maintains his professional office at 20 N. Wacker Drive, Chicago, Illinois.

85. As described above Plaintiffs retained Mr. Krislov and instructed Mr. Koresko "to work with him", educate him and to turn over all relevant documents, files and intellectual property. Mr. Koresko did so and but for the information, intellectual property and expertise supplied by Koresko, Krislov would not have been competent to represent the Plaintiffs in case No. 03-CV-1550.

86. Mr. Krislov repeatedly admitted Mr. Koresko's contribution to the development of the underlying action and, in opposing any attempt by Mr. Koresko to

withdraw advised the Court that Mr. Koresko's participation as co-counsel was essential to the prosecution of the underlying case.

87. Upon obtaining the aforesaid information from Koresko and upon entering his appearance as counsel for the Plaintiffs in the underlying case, Mr. Krislov secured a special and confidential relationship with Koresko and assumed a duty of loyalty to the putative class and his co-venturer in the class action litigation, John Koresko.

88. From the point that he entered into the underlying case, Mr. Krislov acted in his own self-interest and without regard to the putative class claims or any agreement Mr. Koresko had with Plaintiffs for compensation.

89. Mr. Krislov was instrumental in seeking to withdraw class claims and fashioning a settlement of individual claims and asserting a right to collect legal fees based on the settlement. He initially agreed to not disclose the terms of settlement to Mr. Koresko which directly impeded the ability of Mr. Koresko to obtain compensation for services rendered.

90. Mr. Krislov was instrumental in having the Plaintiffs file documents in the underlying case disavowing certain filings by Mr. Koresko on behalf of the putative class. Further, Mr. Krislov provided an affidavit to the Benistar and other Defendants in the underlying case asserting that Mr. Koresko's attempt to pursue a class action was without merit. This was in sharp contrast to his prior statements to the Court that he believed the case had viable claims and class certification was possible. These documents and filings were used by the Benistar and other Defendants in seeking counsel fees against Mr. Koresko and maintaining other collateral attacks against Mr. Koresko.

91. The above described acts were contemplated as part of the individual settlement orchestrated by Mr. Krislov on behalf of the Plaintiffs. They are clearly the acts of an adversary and not that of one who assumed a duty of loyalty to co-counsel and a putative class.

92. In concert with the Defendants in the underlying litigation, Mr. Krislov sought to neutralize and effort by Mr. Koresko to preserve class claims.

93. In concert with the Plaintiffs herein Mr. Krislov has sought to deny any just compensation to Mr. Koresko despite acknowledging his contributions to the case and assertion to the Court that Mr. Koresko was essential to Plaintiffs' claims.

94. If Koresko had known Krislov's intention to act to the detriment of Koresko and the putative class, Koresko would never have shared information, intellectual property or case strategies with him.

95. As a direct consequence of the breach of duty to Mr. Koresko by Mr. Krislov, Koresko and Koresko and Associates have incurred economic loss.

96. Third Party Plaintiff requests the entry of judgment in its favor and against the Defendants Krislov and Krislov and Associates, Ltd. jointly and severally with the other joined defendants in an amount to be determined at the time of trial.


### THIRD PARTY COMPLAINT
### KORESKO & ASSOCIATES, P.C. and JOHN KORESKO v CLINTON KRISLOV and KRISLOV & ASSOCIATES, Ltd.
### COUNT II
### CONVERSION

97. All of the preceding paragraphs are incorporated by reference.

98. As detailed above, John Koresko in the development of this case created and contributed unique intellectual property to Krislov and Plaintiffs with the expectation that Krislov and the Plaintiffs would not use such information on Koresko's efforts to Koresko's detriment. Further, that this material and information was shown to Mr. Krislov for the purpose of assisting in the advancement of the claims of plaintiffs as well as the putative class in the underlying litigation.

99. Mr. Krislov used this property for his own purposes and to secure an economic advantage. Further and without authorization he disclosed the material to the Defendants in the underlying action thereby placing Mr. Koresko at an extreme disadvantage in the representation of the putative class. Likewise the ability of Mr. Koresko to defend in the Pennsylvania Action has been compromised.

100. As a direct consequence of this conversion and unauthorized use of property Mr. Koresko and Koresko and Associates have sustained and economic loss.

101. Third Party Plaintiff requests the entry of judgment in its favor and against the Defendant Krislov jointly and severally with the other joined defendants in an amount to be determined at the time of trial.

## THIRD PARTY COMPLAINT
## KORESKO & ASSOCIATES, P.C. and JOHN KORESKO v CLINTON KRISLOV and KRISLOV and ASSOCIATES, Ltd.
## COUNT III
## INTERFERENCE WITH CONTRACTUAL RELATIONS

102.All of the preceding paragraphs are incorporated by reference.

103. At all times pertinent hereto Clinton Krislov knew that John Koresko.

Koresko and Associates, P.C. and Plaintiffs were party to an agreement for legal fees and services.

104.    In the course of his involvement in the underlying case, Mr. Krislov inserted himself into the conflicts between Mr. Koresko and Plaintiffs as to the binding nature of the December 2002 engagement letter. Mr. Krislov received authorization from Sanchez and Daniels to "negotiate" with Mr. Koresko. Mr. Krislov proposed a contingent fee arrangement to be split evenly between himself and Mr. Koresko. The proposals by Mr. Krislov were without regard to the relative efforts of counsel or any enforceable provision of the parties' fee agreement.

105. Again without regard to a prior and valid fee agreement, Mr. Krislov encouraged the Plaintiffs herein to attempt to exclude Mr. Koresko from asserting a valid lien by non disclosure of settlement and assertion that Mr. Koresko pursued frivolous class claims.

106. Mr. Krislov's conduct was a direct interference with the written fee letters setting forth the agreement for fees and services between Mr. Koresko, Koresko and Associates and the Plaintiffs. It appears the motive for such conduct was to obtain a larger share of any funds available for counsel fees.

. 107. As a direct consequence of this interference with contractual relations, Mr. Koresko and Koresko and Associates have sustained economic loss.

108. Plaintiff Koresko requests the entry of judgment in its favor and against the Defendant Krislov jointly and severally with the other joined defendants in an amount to be determined at the time of trial.

### THIRD PARTY COMPLAINT
### KORESKO & ASSOCIATES, P.C. and JOHN KORESKO v CLINTON KRISLOV and KRISLOV and ASSOCIATES, Ltd
### COUNT IV
### CONSPIRACY

109. All of the preceding paragraphs are incorporated by reference

110. In his own self- interest, Clinton Krislov secured releases from Plaintiffs and effected the dismissal of the class claims and termination of the case while assisting in the prosecution of the Pennsylvania action. First by providing affidavits as described above and second by having Plaintiffs file documents "disavowing" filings by Mr. Koresko.

111. In acting as described above Mr. Krislov has joined the Defendants in the underlying litigation and has conspired with them in the interference with business relations, misuse of trust funds, breach of fiduciary duty, abuse of process and all other acts described below as to any defendant joined herein.

112. As a direct consequence of this conspiracy, Mr. Koresko and Koresko and Associates have sustained and economic loss.

113. Third Party Plaintiff requests the entry of judgment in its favor and against the Defendant Krislov jointly and severally with the other defendants in an amount to be determined at the time of trial.

### THIRD PARTY COMPLAINT
### KORESKO & ASSOCIATES, P.C. and JOHN KORESKO v CLINTON KRISLOV and KRISLOV and ASSOCIATES, Ltd.
### COUNT V
### AIDING AND ABETTING

114. All of the preceding paragraphs are incorporated by reference.

115. In acting as described above Clinton Krislov has aided and abetted all adverse parties named as counterclaim defendants or joinder defendants and has facilitated the retaliatory strike suits, defamation and other torts and breach of duty and any other act described.

116. As a direct consequence of these acts Third Party Plaintiffs have incurred economic loss.

117. Third Party Plaintiffs request the entry of judgment in its favor and against the Plaintiffs jointly and severally in an amount to be determined at the time of trial.

## THIRD PARTY COMPLAINT
## COUNT VI
**KORESKO & ASSOCIATES, P.C. and JOHN KORESKO VS. CLINTON KRISLOV, WAYNE BURSEY, DANIEL CARPENTER, MOLLY CARPENTER, STEP PLAN SERVICES, INC., CHARLES WEBSTER, FREEBORN & PETERS, P.C., RICHARD ORDER, AXINN VELTROP & HARKRIDER, LLP, JACK E. ROBINSON, BENISTAR INSURANCE GROUP, INC. BENISTAR PLAN SERVICES, INC. BENISTAR EMPLOYER SERVICES TRUST CORPORATION, MELLON TRUST OF NEW YORK, BARNES & THORNBURG, LLC, TEPLITZKY & COMPANY, P.C., JEFFERY TEPLITSKY, PRUDENTIAL INSURANCE COMPANY OF AMERICA, SONNENSCHIEN NATH & ROSENTHAL, LLP, THOMAS MURPHY, CIU ASSOCIATES, O'HAGEN SMITH AND AMUNDSEN, LLC, METROPOLITAN LIFE INSURANCE COMPANY, GRIPPO & ELDEN, NATIONAL LIFE INSURANCE COMPANY, HOLLAND & KNIGHT, LLC, HARTFORD LIFE INSURANCE COMPANY, SIDLEY AUSTIN BROWN & WOOD, LLP, AKIN GUMP STRAUSS HAUER & FELD, LLP, AMERICAN FINANCIAL BENEFIT INSURANCE COMPANY, NEW YORK LIFE INSURANCE COMPANY, ,U.S. TRUST OF NEW YORK, GOLDBERG KOHN BELL BLACK ROSENBLOOM & MORITZ, LTD, TRAVERLERS INDEMNITY COMPANY OF CONNECTICUT, IRA SILVERSTEIN AND THORP REED & ARMSTRONG, LLP**

### INTERFERENCE WITH CONTRACTUAL RELATIONS

118. All of the preceding paragraphs are incorporated by reference.

119. Defendant WAYNE BURSEY is an individual employed as the Chief

Executive Officer of Step Plan Services, Inc. and has an office at 100 Grist Mill Road Simsbury, Conn. 06070. Mr. Bursey was a defendant in the underlying action.

120. Defendant DANIEL CARPENTER is an individual formerly employed as the Chief Executive Officer or Chairman of STEP Plan Services, Inc. and has an office at 100 Grist Mill Road Simsbury, Conn. 06070. Mr. Carpenter was a defendant in the underlying action.

121. Defendant MOLLY CARPENTER, is an individual who is an officer, director and/or controlling shareholder of all entities related to Benistar or STEP Services, Inc. She is the wife of Daniel Carpenter and can be served at 100 Grist Mill Road, Simsbury, Conn. 06070.

122. Defendant, STEP PLAN SERVICES, INC. is a Connecticut corporation with a principal place of business at 100 Grist Mill Road, Simsbury, Conn. 06070. STEP SERVICES is an agent and/or affiliate of BENISTAR INSURANCE GROUP, INC. ("BENISTAR INSURANCE") a/k/a BENISTAR ("BENISTAR"). This party was also a defendant in the underlying action

123. Defendant CHARLES WEBSTER is an attorney licensed to practice in the State of Illinois and is a partner at Freeborn and Peters, LLP, and maintains a professional office at 311 South Wacker Drive, Chicago, Illinois. Defendant Webster was counsel to certain of the Defendants in the underlying including Step Plan Services, Inc., Mr. Bursey, Mr, Carpenter and Benistar.

124. Defendant FREEBORN & PETERS, LLP is a limited liability partnership engaged in the practice of law with an office at 311 South Wacker Drive, Chicago,

Illinois and at all times pertinent hereto acted through its partner and agent Charles Webster.

125. Defendant RICHARD ORDER is an attorney licensed to practice law in the State of Connecticut and is a partner at Axinn, Veltrop & Harkrider, LLP with a professional office at 90 State House Square, Hartford, Connecticut 06103. Mr. Order was counsel to certain of the Defendants in the underlying action including Step Plan Services, Inc., Mr. Bursey, Mr., Carpenter and Benistar.

126. Defendant AXIMM, VELTROP & HARKRIDER, LLP is a limited liability partnership engaged in the practice of law with an office at 90 State House Square, Hartford, Connecticut 06103 and at all times pertinent hereto acted through its partner and agent Richard Order.

127. Defendant JACK E. ROBINSON is an attorney licensed to practice law in the State of Connecticut with a professional office at 2187 Atlantic Street, Stamford, Connecticut 06902. Mr. Robinson represented certain of the Defendants in the underlying action including Step Plan Services, Inc., Mr. Bursey, Mr., Carpenter and Benistar.

128.    Defendant BENISTAR ADMININSTRATION SERVICES, INC. a/k/a BENISTAR ADMIN SERVICE, INC. ("BENISTAR ADMIN"), is a Delaware Corporation with a principal place of business at the 100 Grist Mill Road, Simsbury, Connecticut 06070. BENISTAR ADMIN is an agent and/or affiliate of BENISTAR and STEP SERVICES. This party was a defendant in the underlying litigation.

129.    Defendant BENISTAR INSURANCE GROUP, INC. ("BENISTAR INSURANCE") a/k/a BENISTAR a/k/a BENISTAR CORPORATION ("BENISTAR")

is a Delaware corporation with a principal place of business at 100 Grist Mill Road,
Simsbury, Connecticut 06070. This party was a defendant in the underlying litigation.

130.   Defendant BENISTAR 419 PLAN SERVICES, INC. ("BENISTAR 419
SERVICES") is a Delaware corporation with a principal place of business 100 Grist Mill
Road, Simsbury, Connecticut 06070. This party was a defendant in the underlying
litigation.

131. Defendant BENISTAR 419 PLAN a/k/a BENISTAR 419 ADVANTAGE
PLAN ("BENISTAR 419 PLAN") is a Connecticut company with a principal place of
business at 100 Grist Mill Road, Simsbury, Connecticut 06070. This party was a
defendant in the underlying litigation.

132. Defendant BENISTAR EMPLOYER SERVICES TRUST CORPORATION
("BENISTAR TRUST") is a Connecticut company with a principal place of business at
100 Grist Mill Road, Simsbury, Connecticut 06070. This party was a defendant in the
underlying litigation.

133.  Defendant BENISTAR LTD a/k/a BENISTAR GROUP LTD ("BENISTAR
LTD") is a Connecticut corporation with a principal place of business at 100 Grist Mill
Road, Simsbury, Connecticut 06070. BENISTAR LTD is the parent company of the
BENISTAR 419 PLAN. This party was a defendant in the underlying litigation.

134.  Defendant MELLON TRUST OF NEW YORK ("MELLON"), with a
principal place of business at 1735 Market Street, Philadelphia, Pennsylvania 19103, is a
company licensed to do business in the State of Illinois. This party was a defendant in the
underlying litigation.

135. Defendant BARNES & THORNBURG, LLP is a limited liability partnership engaged in the practice of law with an office at One North Wacker Drive, Chicago, Illinois 60606 and at all times pertinent hereto acted through its partner and agent Lee Polk, Esq. and represented MELLON in the underlying litigation.

136. Defendant TEPLITZKY & COMPANY, P.C. is a professional corporation a whose last known place of business is One Bradley Road, Bldg. 600, Woodbridge, Connecticut 06525. Teplitsky & Co., LLC is the successor to this Defendant and is located at the same address. Teplitzky & Company, P.C. and Defendant Jeffrey Teplitsky were or are affiliates of the STEP PLAN SERVICES, INC. This party was a defendant in the underlying litigation.

137. Defendant JEFFREY TEPLITSKY is the owner and/or controls Teplitsky & Company, P.C. and Teplitsky & Co., LLC. Jeffrey Teplitzky was at all times pertinent an affiliate and/or agent of STEP PLAN SERVICES, INC and/or the BENISTAR entities. He can be served at One Bradley Road, Bldg. 600, Woodbridge, Connecticut 06525. This party was a defendant in the underlying litigation.

138. Defendant, PRUDENTIAL INSURANCE COMPANY ("PRUDENTIAL"), with a principal place of business at 745 Broad Street Newark, New Jersey 07101, is an insurance company licensed to do business in the State of Illinois. This party was a defendant in the underlying litigation.

139. Defendant SONNENSCHEIN NATH & ROSENTHAL, LLP is a limited liability partnership engaged in the practice of law with a place of business located at 233 South Wacker Drive, Chicago, Illinois 60606 and at all times pertinent hereto acted

through its partner and agent John I. Grossbart and represented PRUDENTIAL in the underlying litigation.

140.  Defendant THOMAS MURPHY ("MURPHY"), is an insurance agent/broker licensed to do business in the State of Illinois with a place of business located at 110 Jore Blvd., Suite 202, Oak Brook, Illinois. Mr. Murphy was an agent of Defendants CLU and PRUDENTIAL. CLU & ASSOCIATES ("CLU") has a principal place of business at 110 Jore Blvd., Suite 202, Oak Brook, Illinois was at all relevant times an Illinois Insurance Agency licensed to do business in the State of Illinois. CLU along with Mr. Murphy were defendants in the underlying litigation.

141. Defendant O'HAGEN SMITH & AMUNDSEN, LLC is a limited liability corporation engaged in the practice of law with a place of business located at 150 North Michigan Avenue, Chicago, Illinois 60601 and at all times pertinent hereto acted through its partner and agent Kevin M. O'Hagen and represented Thomas Murphy.

142 . Defendant, METROPOLITAN LIFE INSURANCE COMPANY ("METLIFE"), with a principal place of business at One Madison, New York, New York 10010, is an insurance company licensed to do business in the State of Illinois. METLIFE was a defendant in the underlying litigation.

143. Defendant GRIPPO & ELDEN, LLC is a limited liability corporation engaged in the practice of law with a place of business located at 227 West Monroe Street, Chicago, Illinois 60606 and at all times pertinent hereto acted through its partner and agent Christine G. Lyons and represented METLIFE.

144.  Defendant, NATIONAL LIFE INSURANCE COMPANY ("NATIONAL LIFE"), with a principal place of business at One National Life Drive, Montpelier,

Vermont 05604, is an insurance company licensed to do business in the State of Illinois. National Life was a defendant in the underlying litigation.

145. Defendant HOLLAND & KNIGHT, LLC is a limited liability corporation engaged in the practice of law with a place of business located at 131 South Dearborn Street, Chicago, Illinois 60603 and at all times pertinent hereto acted through its partner and agent Martin Durkin and represented NATIONAL LIFE

146. Defendant, HARTFORD LIFE INSURANCE COMPANY ("HARTFORD"), with a principal place of business at Hartford Plaza, Hartford Connecticut 06115, is an insurance company licensed to do business in the State of Illinois. Hartford was a defendant in the underlying litigation.

147. Defendant SIDLEY AUSTIN BROWN & WOOD, LLP is a limited liability partnership engaged in the practice of law with a place of business located at 10 South Dearborn Street, Chicago, Illinois 60603 and at all times pertinent hereto acted through its partner and agent Bruce E. Braverman and represented HARTFORD.

148. Defendant AKIN GUMP STRAUSS HAUER& FELD, LLP is a limited liability partnership engaged in the practice of law with a place of business located at 300 Covent Street, San Antonio, Texas 78205 and at all times pertinent hereto acted through its partner and agent John F. Gillard and represented HARTFORD.

149. Defendant, ALLMERICA FINANCIAL BENEFIT INSURANCE COMPANY ("ALLMERICA"), with a principal place of business at 645 West Grand Driver Road, Howell, Michigan 48843, is an insurance company licensed to do business in the State of Illinois. Allmerica was a defendant in the underlying litigation

150. Defendant, NEW YORK LIFE INSURANCE COMPANY ("NEW YORK
LIFE"), with a principal place of business at 51 Madison, New York, New York 10010 is
an insurance company licensed to do business in the State of Illinois. New York Life was
a defendant in the underlying litigation.

151. Defendant, US TRUST OF NEW YORK ("US TRUST"), with a principal
place of business at City Plaza, Hartford, Connecticut 06103, is a company licensed to do
business in the State of Illinois. US Trust was a defendant in the underlying litigation.

152. Defendant GOLDBERG KOHN BELL BLACK ROSENBLOOM &
MORITZ is a limited liability partnership engaged in the practice of law with a place of
business located at 55 East Monroe Street, Chicago, Illinois 60603 and at all times
pertinent hereto acted through its partner and agent Steven A. Levy and represented US
TRUST

153. Defendant, TRAVERLERS INDEMNITY COMPANY OF
CONNECTICUT ("TRAVERLERS"), with a principal place of business at One Tower
Square 2S2 Corporate, Hartford, Connecticut 06103 is an insurance company licensed to
do business in the State of Illinois. Travelers was a defendant in the underlying litigation.

154. Defendant IRA SILVERSTEIN is an attorney licensed to practice law in the
Commonwealth of Pennsylvania and is a partner at Thorp Reed & Armstrong with
professional offices at 2005 Market Street, Commerce Square, Philadelphia, Pa. 19103.
At all times pertinent hereto Mr. Silverstein was counsel to STEP PLAN SERVICES,
INC. and its affiliates including BENISTAR and at their direction filed and prosecuted
"strike suits" against JOHN KORESKO and others as part of the defense strategy in the
underlying litigation. The "strike suits" were pursued with the approval of the defendants

named in this Third Party Complaint who were or are associated with the BENISTAR
entities, the STEP Plan, or STEP PLAN SERVICES, INC.

155. Defendant, THORP REED & ARMSTRONG, LLP is a limited liability
partnership engaged in the practice of law with a place of business at 2005 Market Street,
Commerce Square, Philadelphia, Pennsylvania 19103. At all times pertinent defendant,
Thorp Reed & Armstrong, LLP acted through its partner and agent, Ira Silverstein.

156. As noted the pleadings in the underlying litigation (Civil Action 03-cv-
1550-U.S.D.C. N.D. Ill.) are incorporated herein. In sum, the Sanchez and Daniels law
firm and its partners and associates brought suit against STEP PLAN SERVICES, INC.
and its affiliates as well as the above named insurance companies, trust companies,
insurance agents and brokers alleging breach of their respective fiduciary duties as to an
employer welfare benefit plan. The case was pursued as a potential class action that was
purportedly settled under the circumstances detailed above.

157. STEP and BENISTAR were the "lead" defendants in the underlying action
and their counsel, Charles Webster and Richard Order also entered their appearance as
co-counsel on behalf MELLON, TEPLITZKY, PRUDENTIAL, MURPHY, CLU,
BRUCE LEVY, METLIFE, NATIONAL LIFE, HARTFORD, ALLMERICA, NEW
YORK LIFE, METROPOLITAN, US TRUST, TRAVERLERS. STEP and
BENISTAR's attorneys Charles Webster and Richard Order acted with the knowledge
and approval of all counsel appearing on behalf of the Defendants in the underlying
litigation.

157. After the case was originally filed in the Eastern District of Pennsylvania
and despite the fact that Plaintiffs were represented by counsel, the attorneys for the

Defendants ( Webster and Order) contacted the Sanchez and Daniels Plaintiffs without the knowledge of their counsel and threatened that they and John Koresko would "pay" for bringing the suit and damaging the "reputation" of Defendants Carpenter and Bursey and their affiliates.

158. Thereafter at the behest of Defendant Carpenter and others, the first strike suit was filed in Connecticut in the United States District Court at Civil Action No. 02-CV-1711 naming Mr. Koresko and Sanchez and Daniels as defendants. The suit alleged *inter alia* that Mr. Koresko and Sanchez and Daniels were pursuing baseless lawsuits and were damaging Mr. Carpenter's reputation. The suit was dismissed.

159. In a related matter another, Arrow Drilling represented by Anderson Kill & Olick ( Mr. Koresko's original co-counsel in the underlying litigation) brought an action against Mr. Carpenter and a number of the joinder defendants herein in the United States District Court for the Eastern District of Pennsylvania. This suit advanced similar claims against these defendants as to an employer benefit plan purchased by Arrow Drilling and administered by BENISTAR. (Civil Action No. 02-CV-9097) That matter is currently pending in the Court of Appeals for the Third Circuit.

160. In response to the Arrow Drilling matter, the STEP defendants filed another suit in the District Court of Connecticut (Civil Action No. 03-cv-1680) naming among others Mr. Koresko and again alleging abuse of process and defamation. That action has been dismissed.

161. The STEP parties continued their campaign against Mr. Koresko and filed suit in the Eastern District of Pennsylvania through Mr. Silverstein and Thorp Reed & Armstrong, LLP. That suit (Civil Action No. 04-CV-2560) is now pending in the Court

of Common Pleas of Philadelphia at Civil Action, March, Term, 2004, No.7718. This action also names Sanchez and Daniels, Arrow Drilling and Anderson Kill & Olick and again alleges abuse of process and defamation. Motions to dismiss are pending.

162. Despite the ongoing and baseless strike suits the underlying litigation continued. The suits did, as clearly intended, create a potential conflict between Mr. Koresko and his clients. The nature of that conflict was addressed in the Motion to Withdraw in the underlying case. In sum, the strike suit created a situation where lawyer and client had adverse interests and may be required to pursue cross claims. The Motion was never decided given the now challenged settlement of the underlying case.

163. At this point Mr. Krislov was in the case and Mr. Koresko continued as counsel for the still putative class. Prior to the settlement, Mr. Koresko filed a second motion for appointment of a receiver and injunctive relief based on the indictment of Daniel Carpenter and conclusion of a Massachusetts civil action and a 20 million dollar plus judgment against Carpenter which endangered trust assets. Further, the Internal Revenue Service had filed subpoena enforcement actions against STEP and BENISTAR in New York and Philadelphia in connection with its investigation of STEP and BENISTAR as abusive tax shelter schemes. In order to avoid the consequences of receivership and injunction and despite Defendants claims that it would litigate the case to the bitter end, settlement was pursued.

164. Defendants through their counsel led by Mr. Order and Webster enlisted the aid of Mr. Krislov and made every effort to exclude Mr. Koresko from the settlement process to the extent that they attempted to make part of the settlement terms non-disclosure to Mr. Koresko. The clear aim was to frustrate any attempt by Mr. Koresko to

obtain compensation for victims, to obtain fees for services rendered to Sanchez and

Daniels and class plaintiffs or vindicate the claims of the putative class. The Court would

not permit this term to stand.

165. Although the terms of settlement are under seal it is obvious that the

Defendants and their counsel required Sanchez and Daniels and Mr. Krislov to file a

document with the Court to "disavow" any acts by Mr. Koresko and further to file an

affidavit by Mr. Krislov alleging that the class action claims had no merit. Said affidavit

was filed in support of the Defendants and Defense counsels efforts to obtain fees from

Mr. Koresko. As noted by the Court in its Memorandum and Order denying the fee

request, Mr. Krislov had previously represented to the Court that the class claims were

viable.

166. It is also clear that once Mr. Krislov and Sanchez and Daniels "accepted"

these terms and filed the documents noted above, Sanchez and Daniels would be

dismissed from the Pennsylvania strike suit.

167. All of the joinder defendants herein knew or should have known that John

Koresko had an agreement with Sanchez and Daniels for legal services and fees. Yet

despite this knowledge the Defendants adopted as their strategy "a divide and conquer"

approach. First Defendants made unauthorized contact with a represented party and

disparaged their counsel and threatened them with collateral litigation. Second,

Defendants pursued the collateral litigation in an effort to force Mr. Koresko and his

clients to abandon the Illinois litigation. Third the Defendants through the use of

collateral litigation sought to create conflict between counsel and clients. Fourth, when

ancillary litigation did not stop the Illinois litigation, Defendants made every effort to

exclude Mr. Koresko from the settlement process and then predicated settlement on the acts as described above.

168. John Koresko submits that the Defendants, each and every one of them severally and jointly, deliberately interfered with his contractual relationship with Sanchez and Daniels and did so with the intent of causing harm to him.

169. John Koresko submits that as Mr. Krislov was his co-counsel and thus co-venturer in the class action matter, the conduct of the Defendants in enlisting Mr. Krislov to abandon the class claims and the class action was a tortuous interference with that business relationship.

170. As a direct consequence of these acts John Koresko and Koresko and Associate, P.C. have suffered economic harm.

171. Plaintiff Koresko requests the entry of judgment in its favor and against all of the Defendants jointly and severally in an amount to be determined at the time of trial.

## THIRD PARTY COMPLAINT
## COUNT VII

**KORESKO & ASSOCIATES, P.C. and JOHN KORESKO VS. CLINTON KRISLOV, WAYNE BURSEY, DANIEL CARPENTER, MOLLY CARPENTER, STEP PLAN SERVICES, INC., CHARLES WEBSTER, FREEBORN & PETERS, P.C., RICHARD ORDER, AXINN VELTROP & HARKRIDER, LLP, JACK E. ROBINSON, BENISTAR INSURANCE GROUP, INC. BENISTAR PLAN SERVICES, INC. BENISTAR EMPLOYER SERVICES TRUST CORPORATION, MELLON TRUST OF NEW YORK, BARNES & THORNBURG, LLC, TEPLITZKY & COMPANY, P.C., JEFFERY TEPLITSKY, PRUDENTIAL INSURANCE COMPANY OF AMERICA, SONNENSCHIEN NATH & ROSENTHAL, LLP, THOMAS MURPHY, CIU ASSOCIATES, O'HAGEN SMITH AND AMUNDSEN, LLC, METROPOLITAN LIFE INSURANCE COMPANY, GRIPPO & ELDEN, NATIONAL LIFE INSURANCE COMPANY, HOLLAND & KNIGHT, LLC, HARTFORD LIFE INSURANCE COMPANY, SIDLEY AUSTIN BROWN & WOOD, LLP, AKIN GUMP STRAUSS HAUER & FELD, LLP, AMERICAN FINANCIAL BENEFIT INSURANCE COMPANY, NEW YORK LIFE INSURANCE COMPANY, , U.S. TRUST OF NEW YORK, GOLDBERG KOHN BELL BLACK ROSENBLOOM & MORITZ, LTD,**

**TRAVERLERS INDEMNITY COMPANY OF CONNECTICUT, IRA
SILVERSTEIN AND THORP REED & ARMSTRONG, LLP**

**DEFAMATION**

172. All of the preceding paragraphs are incorporated by reference.

173. In an effort to destroy John Koresko and Koresko and Associates' reputation
and to discourage any further challenge to the Defendants malfeasance as it relates to
STEP and BENISTAR, counsel named as joinder defendants have engaged in the
practice of making inflammatory and untrue statements about Mr. Koresko, and his
associates. All such statements by whomever made were uttered with the knowledge,
encouragement and approval of all defendants.

174. Defendants Webster, Order, Krislov and Silverstein during the course of the
underlying litigation have made both written and oral statements to members of the
judiciary, the legal community and insurance professionals and Koresko clients
concerning Mr. Koresko's mental stability, professional ethics, competence and
motivation. These statements were not privileged or otherwise entitled to immunity.

175. The STEP and BENISTAR defendants along with their attorneys, Order,
Webster, Robinson and Silverstein and their respective firms caused to be published on a
Benistar/STEP website information about Mr. Koresko and pending litigation that was
false and misleading. The publication was made with the knowledge and approval of all
Defendants and was done with the specific intent to harm Mr. Koresko. When asked to
remove the offending material, the Defendants and especially Mr. Silverstein and Thorp
Reed and Armstrong, LLP refused to do so.

176. All of the Defendants herein approved of and supported the actions of and
acted through Ira Silverstein and Thorp Reed & Armstrong in the filing of strike suits and

pursuit of collateral litigation against Mr. Koresko and/or his affiliates. In the course of

doing so Mr. Silverstein repeatedly called Mr. Koresko a "thief and a liar" and stated that

his clients would "sell him out" and he would get what he deserved from all of the

Defendants. None of the statements are privileged or immune and were made to other

attorneys and a Federal Judge.

177. John Koresko submits that the Defendants, directly or indirectly severally

and jointly, deliberately made or caused to be made unprivileged defamatory statements

about him similar to those detailed in the preceding paragraph with the intent of causing

harm to him.

178. As a direct consequence of these acts John Koresko and Koresko and

Associate, P.C. have suffered economic harm.

179. John Koresko requests the entry of judgment in its favor and against all of

the Defendants jointly and severally in an amount to be determined at the time of trial.

## THIRD PARTY COMPLAINT
## COUNT VIII
**KORESKO & ASSOCIATES, P.C. and JOHN KORESKO VS. CLINTON KRISLOV, WAYNE BURSEY, DANIEL CARPENTER, MOLLY CARPENTER, STEP PLAN SERVICES, INC., CHARLES WEBSTER, FREEBORN & PETERS, P.C., RICHARD ORDER, AXINN VELTROP & HARKRIDER, LLP, JACK E. ROBINSON, BENISTAR INSURANCE GROUP, INC. BENISTAR PLAN SERVICES, INC. BENISTAR EMPLOYER SERVICES TRUST CORPORATION, MELLON TRUST OF NEW YORK, BARNES & THORNBURG, LLC, TEPLITZKY & COMPANY, P.C., JEFFERY TEPLITSKY, PRUDENTIAL INSURANCE COMPANY OF AMERICA, SONNENSCHIEN NATH & ROSENTHAL, LLP, THOMAS MURPHY, CIU ASSOCIATES, O'HAGEN SMITH AND AMUNDSEN, LLC, METROPOLITAN LIFE INSURANCE COMPANY, GRIPPO & ELDEN, NATIONAL LIFE INSURANCE COMPANY, HOLLAND & KNIGHT, LLC, HARTFORD LIFE INSURANCE COMPANY, SIDLEY AUSTIN BROWN & WOOD, LLP, AKIN GUMP STRAUSS HAUER & FELD, LLP, AMERICAN FINANCIAL BENEFIT INSURANCE COMPANY, NEW YORK LIFE INSURANCE COMPANY, ,U.S. TRUST OF NEW YORK, GOLDBERG KOHN BELL BLACK ROSENBLOOM & MORITZ, LTD,**

**TRAVERLERS INDEMNITY COMPANY OF CONNECTICUT, IRA SILVERSTEIN AND THORP REED & ARMSTRONG, LLP**

### ABUSE OF PROCESS

180. All of the preceding paragraphs are incorporated by reference.

181. Defendants Order, Webster and their respective firms and Ira Silverstein and Thorp Reed and Armstrong at the behest of the STEP and BENISTAR Defendants and with the knowledge and approval of all other defendants named herein filed a series of law suits. The purpose of the suits was to quell any challenge or claim against the Defendants in the underlying litigation. They had as a further purpose the creation of conflict between Koresko and his clients and to penalize Koresko.

182. Counter-claim Defendants and Third Party Defendants Clinton Krislov and Krislov and Associates have brought the present action for the purpose of avoiding payment of fees to Mr. Koresko and to protect themselves from liability from their respective breaches of contract.

183. All of the Defendants improperly filed baseless actions to secure an advantage economic or otherwise and have engaged in activities designed to abuse judicial process.

184. As a direct consequence of these acts, John Koresko and Koresko and Associate, P.C. have suffered economic harm.

185. Plaintiff requests the entry of judgment in its favor and against all of the Defendants jointly and severally in an amount to be determined at the time of trial.

## THIRD PARTY COMPLAINT
## COUNT IX

**KORESKO & ASSOCIATES, P.C. and JOHN KORESKO VS. CLINTON KRISLOV,WAYNE BURSEY, DANIEL CARPENTER, MOLLY CARPENTER, STEP PLAN SERVICES, INC., CHARLES WEBSTER, FREEBORN & PETERS, P.C., RICHARD ORDER, AXINN VELTROP & HARKRIDER, LLP, JACK E. ROBINSON, BENISTAR INSURANCE GROUP, INC. BENISTAR PLAN SERVICES, INC. BENISTAR EMPLOYER SERVICES TRUST CORPORATION, MELLON TRUST OF NEW YORK, BARNES & THORNBURG, LLC, TEPLITZKY & COMPANY, P.C., JEFFERY TEPLITSKY, PRUDENTIAL INSURANCE COMPANY OF AMERICA, SONNENSCHIEN NATH & ROSENTHAL, LLP, THOMAS MURPHY, CIU ASSOCIATES, O'HAGEN SMITH AND AMUNDSEN, LLC, METROPOLITAN LIFE INSURANCE COMPANY, GRIPPO & ELDEN, NATIONAL LIFE INSURANCE COMPANY, HOLLAND & KNIGHT, LLC, HARTFORD LIFE INSURANCE COMPANY, SIDLEY AUSTIN BROWN & WOOD, LLP, AKIN GUMP STRAUSS HAUER & FELD, LLP, AMERICAN FINANCIAL BENEFIT INSURANCE COMPANY, NEW YORK LIFE INSURANCE COMPANY, ,U.S. TRUST OF NEW YORK, GOLDBERG KOHN BELL BLACK ROSENBLOOM & MORITZ, LTD, TRAVERLERS INDEMNITY COMPANY OF CONNECTICUT, IRA SILVERSTEIN AND THORP REED & ARMSTRONG, LLP**

### CONSPIRACY

186. All of the preceding paragraphs are incorporated by reference.

187. As described above the third party defendants took affirmative steps and/or ratified the same and in agreement and concert with one another conspired to interfere with business relationships, defame John Koresko, abuse process to damage and harm John Koresko.

188. As a direct consequence of these acts John Koresko and Koresko and Associate, P.C. have suffered economic harm.

189. Plaintiff requests the entry of judgment in its favor and against all of the Defendants jointly and severally in an amount to be determined at the time of trial.

## THIRD PARTY COMPLAINT
## COUNT X
**KORESKO & ASSOCIATES, P.C. and JOHN KORESKO VS. CLINTON KRISLOV, WAYNE BURSEY, DANIEL CARPENTER, MOLLY CARPENTER, STEP PLAN SERVICES, INC., CHARLES WEBSTER, FREEBORN & PETERS, P.C., RICHARD ORDER, AXINN VELTROP & HARKRIDER, LLP, JACK E. ROBINSON, BENISTAR INSURANCE GROUP, INC. BENISTAR PLAN SERVICES, INC. BENISTAR EMPLOYER SERVICES TRUST CORPORATION, MELLON TRUST OF NEW YORK, BARNES & THORNBURG, LLC, TEPLITZKY & COMPANY, P.C., JEFFERY TEPLITSKY, PRUDENTIAL INSURANCE COMPANY OF AMERICA, SONNENSCHIEN NATH & ROSENTHAL, LLP, THOMAS MURPHY, CIU ASSOCIATES, O'HAGEN SMITH AND AMUNDSEN, LLC, METROPOLITAN LIFE INSURANCE COMPANY, GRIPPO & ELDEN, NATIONAL LIFE INSURANCE COMPANY, HOLLAND & KNIGHT, LLC, HARTFORD LIFE INSURANCE COMPANY, SIDLEY AUSTIN BROWN & WOOD, LLP, AKIN GUMP STRAUSS HAUER & FELD, LLP, AMERICAN FINANCIAL BENEFIT INSURANCE COMPANY, NEW YORK LIFE INSURANCE COMPANY, , U.S. TRUST OF NEW YORK, GOLDBERG KOHN BELL BLACK ROSENBLOOM & MORITZ, LTD, TRAVERLERS INDEMNITY COMPANY OF CONNECTICUT, IRA SILVERSTEIN AND THORP REED & ARMSTRONG, LLP**

### AIDING AND ABETTING

190. All of the preceding paragraphs are incorporated by reference.

191. As to each and every third party defendant, the conduct described above constitutes aiding and abetting. Said Defendants by their affirmative acts and approval aiding and abetted in the interference with business relationships, defamation and abuse of process.

192. As a direct consequence of these acts John Koresko and Koresko and Associate, P.C. have suffered economic harm.

193. Plaintiff requests the entry of judgment in its favor and against all of the Defendants jointly and severally in an amount to be determined at the time of trial.

## THIRD PARTY COMPLAINT
## COUNT XI

### JOHN KORESKO AND KORESKO AND ASSOCIATES, P.C. V ALL THIRD PARTY DEFENDANTS AND ALL PLAINTIFFS

### ERISA VIOLATIONS

194. All of the preceding paragraphs are incorporated by reference.

195. The Plaintiffs herein and all of the third party defendants are ERISA as well as common law fiduciaries.

196. Pursuant to ERISA §3 (210(A) (29 U.S.C. §1002 (21)(A) and ERISA §402 (a) (1) (29 U.S.C. §1102 (a)(1) and ERISA §2(21)(A)(i) (29 U.S.C §1102 (21)(A) (i) a fiduciary duty exists where there is the power to control and manage the operation and administration of a plan or where a company or person exercises discretionary authority or discretionary control or any form of authority and control over plan assets. Thus all of the parties whether third party defendants or counterclaim defendants had and have status as ERISA fiduciaries.

197. Third Party Plaintiff makes specific reference to the First Amended Complaint in the underlying action describing the fiduciary status of the Defendants in that action and incorporates it herein. As to the Third Party Defendants not named in the underlying action, their conduct in the present action brings them within the parameters of ERISA and common law fiduciary status.

198. John Koresko submits that as fiduciaries the third party defendants and the counterclaim defendants in failing to protect plan assets and/or failing to take any action to prevent breach of duty by co-fiduciaries created an environment and a circumstance

which permitted diversion of plan assets, and other improper acts. Said improper acts were compounded by the above noted strike suits and sub rosa settlement strategy.

199. As a consequence of these ERISA violations John Koresko and other victims have been harmed.

200. Plaintiff requests the entry of judgment in its favor and against all of the Defendants jointly and severally in an amount to be determined at the time of trial.

## THIRD PARTY COMPLAINT
## COUNT XII

### JOHN KORESKO AND KORESKO AND ASSOCIATES, P.C. V ALL THIRD PARTY DEFENDANTS AND ALL PLAINTIFFS

### CONSPIRACY TO COMMIT ERISA VIOLATIONS

201. All of the preceding paragraphs are incorporated by reference.

202. As described above the third party defendants took affirmative steps and/or ratified the same and in agreement and concert with one another knowlingly conspired to violate ERISA in order to effect harm upon John Koresko and other parties.

203. As a direct consequence of these acts John Koresko and Koresko and Associate, P.C. have suffered harm.

204. Plaintiff requests the entry of judgment in its favor and against all of the Defendants jointly and severally in an amount to be determined at the time of trial.

## THIRD PARTY COMPLAINT
## COUNT XIII

### JOHN KORESKO AND KORESKO AND ASSOCIATES, P.C. V ALL THIRD PARTY DEFENDANTS AND ALL PLAINTIFFS

### RICO VIOLATIONS

205. All of the preceding paragraphs are incorporated by reference.

206. The Third Party Defendants and Counterclaim Defendants are persons within the meaning of 18 U.S.C §1961 (3).

207. Specific reference is made to the Complaint in the underlying action describing STEP Plan Services, Inc. as an enterprise within the meaning of 18 U.S.C. § 1961 (4) and the allegations of racketeering activity as defined by 18 U.S.C. § 1961 (5). The same are incorporated herein. In sum, STEP Plan Services, Inc. converted to it use employee welfare benefit plan assets and utilized the U.S. mail and interstate wires to carry out a scheme designed to defraud other plan participants.

208. In engaging in the conduct as described and directed at John Koresko, all of the Third Party Defendants, and the Counterclaim Defendants, these parties have continued and advanced the racketeering activities of STEP. This conduct, perpetrated by and to further the interest of STEP and related parties is a violation of 18 U.S.C. §1962 (c).

209. As a direct consequence of this conduct John Koresko and Koresko and Associates, P.C. have sustained injury within the meaning of 18 U.S.C. §1964 (c).

210. Plaintiff requests the entry of judgment in its favor and against all of the Defendants jointly and severally in an amount to be determined at the time of trial.

### THIRD PARTY COMPLAINT
### COUNT XIV

### JOHN KORESKO AND KORESKO AND ASSOCIATES, P.C. V ALL THIRD PARTY DEFENDANTS AND ALL PLAINTIFFS

### CONSPIRACY TO COMMIT RICO VIOLATIONS

211. All of the preceding paragraphs are incorporated by reference.

212. The Third Party Defendants and Counterclaim Defendants agreed to and assisted STEP Plan Services as detailed above. These parties knew that a scheme to defraud was being advanced by STEP and that as part of this scheme STEP intended to undermine or destroy any challenge to its control over plan assets. This included the strike suits and other conduct described above. Despite this knowledge these parties agreed to and made affirmative acts which assisted STEP in attempting to avoid or secrete culpability the wrongful diversion of assets.

213. Through the wrongful conduct alleged above the Third Party Defendants and Counterclaim Defendants conspired as set forth in violation of 18 U.S.C § 1962 (d).

214. As a direct consequence of this conduct John Koresko and Koresko and Associates, P.C. have sustained injury within the meaning of 18 U.S.C. §1964 (c).

215. Plaintiff requests the entry of judgment in its favor and against all of the Defendants jointly and severally in an amount to be determined at the time of trial.

Respectfully submitted,

John J. Koresko, V.
On his own behalf and
As counsel for Koresko & Associates, P.C.

200 West Fourth Street
Bridgeport, Pa. 19406
610-992-2200

## CERTIFICATE OF SERVICE

I hereby certify that the Defendants Answer, Affirmative Defenses,

Counterclaims and Third Party Complaint has been served upon counsel for the Plaintiffs

by overnight mail to the address appearing below on March 8, 2005.

> John Piegore, Esquire
> 333 W. Wacker Drive
> Suite 500
> Chicago, Ill. 60605

John J. Koresko, V

**EXHIBIT A**

# Koresko & Associates

### A PROFESSIONAL CORPORATION

Attorneys

John J. Koresko, V [+*]
Jeanne D. Bonney [**]

200 West Fourth Street
Bridgeport, Pennsylvania 19405
(610) 992-2200
Fax (610) 992-1091

+ Certified Public Accountant
* Also Admitted in Florida
** Also Admitted in New Jersey

December 3, 2002

Manuel Sanchez, Esquire                                  Fax 312-641-3004
Sanchez & Daniels
333 W. Wacker Drive, Suite 500
Chicago, Ill 60605

Re:    Sanchez & Daniels v. BENISTAR et al.
       E.D. PA No. 02-CV-8213
       Temporary Restraining Order

Dear Manny:

It was nice to talk to you and Tim Hoffman the other day.

As you know, we spent the weekend preparing the Complaint, Motion for Temporary Restraining Order and Memorandum of Law. We felt compelled to do this immediately in light of the threatening letter sent by Wayne Bursey. I hope the product was satisfactory, given the short notice.

Today, Judge Davis granted the TRO. The only thing he did not give us was my first paragraph in the proposed order. I asked that the policies be transferred to you or your nominee as trustee. According to Virginia Miller, the Judge said he would probably grant that relief after the Preliminary Injunction hearing. I expect a great deal of action between now and the hearing date of January 13.

Although we have been talking for many weeks about your case, I neglected to send a fee agreement. Please forgive me, but I think Jack Daniels and I had a little talk about this when he first contacted me. It was our intention to charge hourly with respect to the S&D amounts (the 20%). Professional time to date and hereafter will be billed at $180 to $350 per hour, depending on the level of the service provider. Paralegals will be billed at a rate between $50 and $90 per hour. We will also charge for reasonable administrative expenses and costs attributable for the litigation. Under ERISA, the prevailing party is entitled to statutory fees and costs; however, S&D will be liable for the amounts not awarded against the defendants. We need you to pay us within 30 days of billing. We may ask for a reasonable retainer as we deem necessary from time to time, and respectfully request $15,000 at this time.

Of course, the class action and other issues are of recent vintage and will be treated differently. We will work on a typical contingency (e.g., 35% pre-trial/50% prior to appeal/55% after appeal, plus costs and expenses) for the claims other than recovery of the S&D money that STEP was going to misappropriate. While we will ask the Court for statutory and equitable fees in an amount of the greater of our hourly calculation or the contingency fee, any amount not awarded will come out of the recovery. We will seek a plaintiff's bonus of at least 5% of the recovery for you and your associates as class plaintiffs, if we are

Manuel Sanchez, Esquire
December 3, 2002
Page 2

successful on the class claims. You authorize us to seek a success bonus fee in such reasonable amount the Court may approve, in addition to any other compensation. We respectfully request power of attorney to negotiate and present any settlement to the tribunal with jurisdiction.

We will do our best to fairly allocate the charges between those directly attributable to recovering the S&D cash values, and those attributable to the other claims. For example, if STEP agrees to turn over the cash surrender value without reduction, or the court orders it at an early stage, it is our intention that the S&D fees would end at that point. We would want to continue the class claims, nonetheless, and we are pursuing these claims based upon your assurances that you will continue to co-operate as class plaintiffs until the claims are resolved.

You consent to our withdrawal if our agreement is violated, or if the Rules of Professional Conduct permit us to withdraw from the matter. As you know, our co-counsel is Anderson, Kill & Olick ("AKO"). Their staff will be working with me on this case, and their fees are deemed to be costs of the litigation. AKO is working as a contractor under the direction of my firm, but we do not assume liability for any malpractice of AKO. You agree that my firm will still be entitled to the agreed compensation as counsel, even if I must technically resign and/or render services as an expert witness. When I work with AKO, the litigation proceeds in conjunction with my direction, regardless of my technical role in the case. If we need other counsel, we will identify and hire them consistent with this agreement.

You consent to our engagement of necessary experts as we deem necessary for the competent prosecution of these actions. Their fees will be paid promptly by you if in connection with the S&D claims, or they will be costs of the class engagement, as appropriate. You agree that you will have someone available to attend court proceedings, as necessary.

As you no doubt have prepared countless fee agreements, you probably understand the terms of engagement customary in the legal profession. If there is something not clear or unacceptable, please call me so we can discuss it and clarify the terms of engagement. Kindly acknowledge your agreement to our representation by signing below and returning a copy to me.

I honestly believe there will be a settlement once the perpetrators understand the gravity of this matter. The insurance companies and Mellon Trust are going to get very disturbed. I have something quite nuclear in store.

Please contact us if we can be of further assistance.

Very truly yours,


John J. Koresko, V

JJK/
Enclosure
Acknowledged: _____     Date:_____
                   Manuel Sanchez / Sanchez & Daniels