# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SANCHEZ & DANIELS, | ) |
|           Plaintiff, | ) |
| v. | )    Case No. 04 C 5183 |
| KORESKO & ASSOCIATES and JOHN KORESKO, | ) |
|           Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The law firm of Sanchez & Daniels (S&D) has sued the law firm of Koresko & Associates, as well as John Koresko individually (collectively, Koresko), invoking the Court's diversity jurisdiction. 28 U.S.C. § 1332(a). S&D seeks a declaratory judgment that it is not obligated to pay Koresko for legal services performed for S&D from 2002 to 2004 on the ground that Koresko breached an alleged agreement to retain co-counsel to assist in a lawsuit in which Koresko represented S&D.. Koresko has counterclaimed for breach of contract, unjust enrichment, quantum meruit, and breach of fiduciary duty. Both sides have moved for summary judgment. For the following reasons, the Court denies Koresko's motion, and grants in part and denies in part S&D's motion.

## Facts

S&D, a law firm located in Chicago, discovered in 2002 that it had a possible cause of action against STEP Services, Inc. (STEP) for fraudulent marketing and administration of S&D's employee benefits plan. S&D sought out a lawyer with expertise in employee benefits law and, upon recommendation, settled on Koresko, a Pennsylvania attorney with experience in ERISA

matters. On or about September 1, 2002, S&D asked Koresko to draft a demand letter to STEP seeking return of S&D's investment in the plan. The parties agreed that if litigation commenced, Koresko would work alongside the law firm of Anderson Kill & Olick (AKO) to prosecute the case. S&D considered it important to retain AKO because Koresko had little litigation experience and did not have the resources to handle a large lawsuit.

On December 2, 2002, Koresko and AKO filed a class action lawsuit against STEP and others in the United States District Court for the Eastern District of Pennsylvania. On December 3, 2002, Koresko wrote a letter to S&D attempting to finalize a fee agreement. The letter provided, among other things, that S&D would pay Koresko an hourly fee for his work on S&D's individual case and that Koresko would receive a percentage of the recovery on the class claims. S&D says that upon receiving the letter, S&D called Koresko and told him that the firm would not pay him or AKO on an hourly basis. Koresko denies that the phone conversation took place, but, in any case, Koresko's fee letter, which included a line for an S&D signature, was never signed.

On February 11, 2003, S&D voluntarily dismissed the class action case in Pennsylvania and refiled it in the Circuit Court of Cook County. On March 3, STEP removed the case to this Court. *Daniels v. Bursey*, No. 03 C 1550 (N.D. Ill.). On June 12, AKO withdrew from the case, citing a conflict of interest arising from the firm's representation of one of the corporate defendants in other matters. Over the next several months, Koresko attempted unsuccessfully to find a suitable replacement for AKO. As a result, lawyers from S&D had to appear in court from time to time, and Koresko obtained leave of court to appear *pro hac vice*.

Eventually, on February 10, 2004, attorneys Clinton Krislov and Jason Stiehl appeared as

2

counsel for S&D. Soon afterwards, S&D decided to settle its individual claims, and on June 21, the case was referred to Magistrate Judge Schenkier to conduct a settlement conference. On June 25, 2004, Koresko filed a motion to withdraw as attorney of record, citing a conflict of interest. On July 15, Judge Schenkier set the case for a settlement conference to be held on July 23. On July 21, Koresko sent Judge Schenkier a letter – without authorization from S&D – requesting that the settlement conference be postponed on account of his pending motion to withdraw. Judge Schenkier denied Koresko's request.

The July 23, 2004 settlement conference did not end in settlement, but Judge Schenkier set the case for a second settlement conference to take place on September 8. Koresko again asked Judge Schenkier to postpone the settlement conference, and Judge Schenkier again denied his request.

On August 6, 2004, S&D filed this lawsuit asking the Court to declare that Koresko breached its contract with S&D by failing to secure competent co-counsel to assist in prosecuting the lawsuit, or, in the alternative, that Koresko's recovery for legal services should be reduced by the amount expended by S&D attorneys and Krislov in prosecuting the lawsuit. S&D's action also includes an allegation that it retained Koresko on a contingency fee basis. Compl. ¶¶18-19. S&D seeks a declaratory judgment that it owes Koresko nothing, or at most owes him a minimal quantum meruit fee.

On September 9, the parties in the underlying suit reached a settlement of S&D's individual claims. On September 13, Koresko filed a memorandum and supplemental memorandum advising the court of certain developments in related litigation against STEP. S&D claims that Koresko was not authorized to make this filing.

On October 1, 2004, pursuant to the settlement agreement, S&D filed a motion for leave to amend its second amended complaint to withdraw the class allegations. On October 12, purportedly as a representative of the putative class, Koresko filed objections to the settlement agreement. On October 18, S&D filed a response to Koresko's objections, requesting that they be overruled. On October 19, the Court overruled Koresko's objections to the settlement, ruling that a court need not approve an individual party's settlement when a case is filed as a putative class action.

On October 22, 2004, Koresko filed objections to S&D's motion to voluntarily dismiss its complaint. On October 26, the Court granted S&D's motion to dismiss the complaint. Koresko then appealed that ruling – again without S&D's approval – to the Seventh Circuit, which recently dismissed the appeal on the ground that Koresko lacked standing to prosecute an appeal..

On March 9, 2005, Koresko filed a counterclaim against S&D in the present case, alleging breach of contract, unjust enrichment, quantum meruit, and breach of fiduciary duty. Specifically, Koresko contends in his counterclaim that S&D breached a written fee agreement by failing to pay Koresko what he is owed and by failing to pay AKO; that S&D has been unjustly enriched by obtaining the benefit of Koresko's services without paying for them; that even if no contract existed Koresko is entitled to recover in quantum meruit for the reasonable value of his services; and that S&D breached a fiduciary duty to Koresko by abandoning the class claims.[1]

S&D and Koresko have both moved for summary judgment. Neither party has made a

---

[1] Koresko has abandoned his conversion claim (Count 3).

jury demand.

## Discussion

Summary judgment is appropriate if the evidence presented "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The Court reviews the facts and draws all reasonable inferences in favor of the non-moving party. *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005). It is not enough for the non-moving party to rest on the allegations or denials contained in the pleadings. *Id.* To defeat a motion for summary judgment, the party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.,* 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted).

At the outset, there appears to be some disagreement as to whether Illinois or Pennsylvania law controls this case. Koresko concedes, however, that "there appear . . . to be no material differences between Pennsylvania and Illinois contract law." Def. Mem. at 4. Where the parties choose not to make choice of law an issue, the Court need not make an independent determination. *See In re Stoecker*, 5 F.3d 1022, 1029 (7th Cir. 1993). Consequently, the Court applies Illinois law.

### 1. Breach of contract

Both Koresko and S&D have moved for summary judgment on Koresko's breach of contract claim. Koresko argues that S&D agreed to pay him on an hourly basis and agreed to pay for AKO's fees as costs of the litigation. S&D argues that there was no contract with respect to Koresko's fees and that Koresko agreed to pay for AKO's fees out of his own compensation.

5

It is unclear whether the parties believe that Koresko's and AKO's fees involved two separate contracts or two provisions in the same contract, but regardless, we examine each purported agreement in turn.

### a. Koresko's fees

S&D maintains that it is entitled to summary judgment on Koresko's breach of contract claim because Koresko has not presented evidence that the parties agreed on Koresko's compensation. In response, Koresko agrees that the parties had no express agreement but argues that he is entitled to summary judgment because S&D impliedly agreed to the terms of his December 3, 2002 letter. We first consider whether Koresko has offered evidence that would support a finding that an implied contract exists. If he has not, then S&D is entitled to summary judgment on this claim.

The traditional elements of a breach of contract claim are offer, acceptance, and consideration. *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 26, 830 N.E.2d 619, 625 (2005). Offer and acceptance can occur through express agreement, either oral or written, or "by a promissory expression which may be inferred from the facts and circumstances which show an intent to be bound." *Century 21 Castles By King, Ltd. v. First Nat. Bank of Western Springs*, 170 Ill. App. 3d 544, 548, 524 N.E.2d 1222, 1225 (1988). The first method of agreement creates an express contract; the second creates a contract implied in fact. *Id.*

In *Kohlenbrener v. N. Suburban Clinic, Ltd.*, 356 Ill. App. 3d 414, 415, 826 N.E.2d 563, 564 (2005), an attorney sued his client's former closely held medical corporation after the corporation told the client that his shares in the corporation were worthless, bought them for $30,000, and then sold them for a substantial profit. The client agreed to pay his attorney an

hourly fee up to $25,000 plus a thirty-three percent contingency fee, with the hourly fee to be deducted from any contingency payment. *Id.* at 415, 826 N.E.2d at 565. After the client paid the attorney $25,000 in hourly fees, the client died. *Id.* at 416, 826 N.E.2d at 565. His wife, as executor of her husband's estate, elected to continue the lawsuit. *Id.* at 417, 826 N.E.2d at 566. Shortly thereafter, the parties settled the case for $100,000. *Id.* The attorney then sent the wife a proposed settlement distribution identifying $33,333 as "Contingent Attorney's Fees." *Id.* at 418, 826 N.E.2d at 566. When the wife objected that the previous $25,000 payment should be deducted from the contingency fee, the attorney said that the attorney-client relationship ended with the death of the client and that the $33,333 represented the fair and reasonable fee he should receive in quantum meruit. *Id.* at 418, 826 N.E.2d at 567. The court rejected the attorney's attempt to disclaim the previous contract and held that by describing the $33,333 as "Contingent Attorney's Fees," he expressed his intent to extend the terms of her husband's express fee agreement and created a contract implied in fact. *Id.* at 419, 826 N.E.2d at 567.

By contrast, in *U.S. Fidelity & Guar. Co.*, a primary insurer sued an excess insurer to recover the amount it expended to settle a claim in excess of the primary limits of its policy. 198 Ill. App. 3d at 952, 556 N.E.2d at 672. The primary insurer claimed that a contract implied in fact was created at the settlement conference when the excess insurer failed to respond to the primary insurer's statement that it "was not making payment as a volunteer" and when the excess insurer acknowledged that the primary insurer was going to file a declaratory judgment action to determine the parties' liability. *Id.* at 957, 556 N.E.2d at 676. The court said that the primary insurer's complaint failed to reveal, "any acts, conduct, or circumstances at the settlement conference which would infer CNA's intent to be bound to any further distribution of liability."

7

*Id.* at 958, 556 N.E.2d at 676. The court went on to say that the excess insurer's acknowledgment of the primary insurer's intent to file a declaratory action was nothing more than an acknowledgment and suggested nothing about its willingness to pay an increased share of the settlement. *Id.* at 958, 556 N.E.2d at 677.

In this case, Koresko has produced no evidence of an affirmative act that would signal S&D's acceptance of his proposed contract terms. According to Koresko, around September 1, 2002, he first met with S&D to discuss the terms of his compensation. Koresko Aff. ¶9. He says that he told S&D the terms that he subsequently repeated in his December 3 letter and that S&D made no objections. *Id.* ¶11. With respect to the December 3 letter, Koresko says that John Daniels, a named partner at S&D, called shortly after receiving it, only to clarify how S&D's expenses and the class's expenses would be divided. After some discussion, Koresko said he would be reasonable and fair in dividing the expenses and Daniels "agreed with that explanation." *Id.* ¶21. Koresko maintains that he never heard anything about compensation from that point until June 2003, when S&D said it wanted to settle the case and that it would only pay Koresko $100,000.

This evidence is not enough to give rise to a genuine issue of fact as to the existence of a contract implied in fact, let alone to establish an implied contract as a matter of law as Koresko contends. Unlike in *Kohlenbrener*, where the attorney made an affirmative act that suggested he intended to be bound by previously agreed upon contract terms, Koresko has presented evidence that S&D at most inquired into Koresko's proposed terms. Inquiry and silence are comparable to the conduct of the excess insurer in *U.S. Fidelity & Guar. Co.*, which failed to object to the primary insurer's statements but made no affirmative act demonstrating acceptance. No

reasonable fact finder could find a contract implied in fact from the evidence presented by Koresko. The Court therefore grants S&D's motion for summary judgment on Koresko's breach of contract claim as it concerns Koresko's compensation and denies Koresko's motion for summary judgment as it concerns the same.

      **b.    AKO**

Koresko has moved for summary judgment on his breach of contract claim – insofar as it concerns AKO's fees – arguing that S&D impliedly agreed to the terms of Koresko's December 3 fee proposal. Because the Court has already ruled that the December 3 fee letter did not create an implied contract, this motion is denied.

In S&D's complaint, it seeks a declaratory judgment that Koresko breached a contract with S&D by failing to replace AKO in a timely manner. S&D contends that Koresko undertook to secure competent co-counsel to prosecute the lawsuit but failed to do so. S&D offers two statements that it claims demonstrate that Koresko agreed to replace AKO if needed. First, it presents the affidavit of Manuel Sanchez, the other named partner at S&D, who testified that "Mr. Koresko represented to [S&D] that if litigation became necessary . . . Anderson Kill & Olick was willing and able to serve as Mr. Koresko's subcontractor." Sanchez Aff. ¶28. S&D also points to Koresko's December 3 letter, in which he stated, "If we need other counsel, we will identify and hire them consistent with this agreement."

Neither of these statements conclusively demonstrates an undertaking on the part of Koresko to replace AKO. Koresko contends that it was understood that S&D had the obligation to find co-counsel in Chicago. Given the evidence presented by S&D, the Court cannot say as a matter of law that Koresko breached a contract to provide replacement litigation counsel. S&D

9

is not entitled to summary judgment on its claim of breach.[2]

### b. Quantum meruit

Koresko and S&D have both moved for summary judgment on Koresko's quantum meruit claim.[3] In Illinois, "[a] discharged attorney may be compensated for the services rendered before the discharge on a quantum meruit basis." *Much Shelist Freed Denenberg & Ament v. Lison*, 297 Ill. App. 3d 375, 379, 696 N.E.2d 1196, 1199 (1998). When attorney and client enter into an express contract for representation, the express contract controls, but when there is no express contract, there is generally an implied promise to pay reasonable compensation under quantum meruit. *Slater v. Jacobs*, 56 Ill. App. 3d 636, 638, 371 N.E.2d 1054, 1056 (1977); *see also People's Cas. Claim Adjustment v. Darrow*, 172 Ill. 62, 64, 49 N.E. 1005, 1005 (1898). Quantum meruit means "as much as he deserves." *Much Shelist*, 297 Ill. App. 3d at 379, 696 N.E.2d at 1199.

S&D does not dispute that Koresko ordinarily would be entitled to quantum meruit recovery for the legal services he provided, but it argues that Koresko should be barred from recovery because he committed misconduct during the course of his representation. Specifically, S&D contends, Koresko failed to find new counsel to replace AKO; filed pleadings without S&D's consent; and tried to derail the settlement.

---

[2] It is unclear to the Court how S&D's allegation that Koresko was retained on a contingency fee basis fits into its claim in this case. As best as we can tell, S&D is not pursuing that contention; it argued in response to Koresko's summary judgment motion that there was no agreement on the compensation term of the parties' agreement. Pl. Resp. to Def. Mot. for Summ. Judg. at 6.

[3] Though Koresko, in his complaint, asserts separate claims for quantum meruit and unjust enrichment, he only argues in terms of quantum meruit in his motion for summary judgment. It is unclear whether he continues to pursue the unjust enrichment claim.

10

An attorney's egregious misconduct can prevent quantum meruit recovery. *See id.* at 381, 696 N.E.2d at 1201. However, not every violation of the rules of professional responsibility justifies a complete denial of attorney fees. *Lustig v. Horn*, 315 Ill. App. 3d 319, 327, 732 N.E.2d 613, 620 (2000). Whether an attorney acted egregiously is a matter for the trial court to determine in its discretion. *Much Shelist*, 297 Ill. App. 3d at 382, 696 N.E.2d at 1201.

In general, Illinois courts have denied an attorney quantum meruit recovery only when the attorney entered into an agreement with the client that violated public policy, such as an improper contingency fee or fee-sharing agreement. *See id.* at 381, 696 N.E.2d at 1201; *Am. Home Assurance Co. v. Golomb*, 239 Ill. App. 3d 37, 43-44, 606 N.E.2d 793, 798 (1992); *Licciardi v. Collins*, 180 Ill. App. 3d, 1051, 1062, 536 N.E.2d 840, 847 (1989); *Leoris v. Dicks*, 150 Ill. App. 3d 350, 354, 501 N.E.2d 901, 904 (1986). In other cases, even though the attorney's conduct was viewed as a breach of the professional rules, the attorney was allowed to recover for the reasonable value of his work. *See Lustig*, 315 Ill. App. 3d at 328, 732 N.E.2d at 621 (attorney's fee demand was somewhat excessive and unwarranted); *Much Shelist*, 297 Ill. App. 3d at 381, 696 N.E.2d at 1201 (attorney failed to obtain signature from client); *Valenti v. Swanson*, 294 Ill. App. 3d 492, 495, 690 N.E.2d 1031, 1033 (1998) (attorney failed to comply with the Personal Injury Representation Agreement Act by not giving the clients a copy of the Act); *Anderson v. Anchor Org. for Health Maint.,* 274 Ill. App. 3d 1001, 1007, 654 N.E.2d 675, 681 (1995) (contingent fee agreement contained an attorney's fee provision exceeding the maximum percentage an attorney can receive without court approval, in violation of section 2-1114 of the Code of Civil Procedure).

That said, it does not appear that complete denial of quantum meruit recovery is always

limited to cases involving improper agreements. As the Illinois Appellate Court has stated, "[w]hether quantum meruit recovery is barred should depend on the egregiousness of the particular conduct involved." *Much Shelist*, 297 Ill. App. 3d at 381, 696 N.E.2d at 1201. This strikes the Court as an essentially factual inquiry, involving the nature and extent of the misconduct, its effect on the quality of the attorney's representation of the client, and, perhaps, the state of mind of the attorney. The fact that this Court presided over the case in connection with which the alleged misconduct occurred does not permit us to make this essentially factual determination without a trial. At present, all we can say is that S&D is not entitled to summary judgment on its claim that Koresko should be denied recovery altogether, and Koresko is not entitled to summary judgment in his favor either. The issue of quantum meruit recovery will require a trial.

    **c.**  **Fraud**

In his summary judgment memorandum, Koresko contends that he was the victim of fraud on the part of S&D. *See* Def. Summ. Judg. Mem. at 18-19. Koresko's counterclaim, however, includes no such claim. And now that the discovery deadline has closed, it is far too late for him to try to add a fraud claim to his counterclaim.

    **d.**  **Breach of fiduciary duty**

S&D argues that it is entitled to summary judgment on Koresko's breach of fiduciary duty claim. The Court is unaware of any authority holding that a client owes a fiduciary duty to his attorney. Rather, a fiduciary duty runs in the opposite direction. Koresko claims, however, that S&D and Koresko became joint venturers and thus fiduciaries when S&D entered the case as co-counsel. Koresko cites no case law for the proposition that co-counsel are joint venturers

12

or fiduciaries, and the Court declines to so hold. *See Canel & Hale, Ltd. v. Tobin*, 304 Ill. App. 3d 906, 917, 710 N.E.2d 861, 871 (1999) (holding that attorneys' fee-sharing agreement was insufficient to create a joint venture).

**Conclusion**

For the foregoing reasons, the Court grants S&D's motion [docket no. 184] as to Counts 3 and 5 of Koresko's counterclaim, as well as that part of Count 1 that alleges that S&D breached a written fee agreement. S&D's motion is otherwise denied. Koresko's motion for summary judgment [docket no. 178] is denied. The case is set for a status hearing at 11:00 a.m. on December 1, 2005 to set a trial date.

/s/ Matthew F. Kennelly<br>MATTHEW F. KENNELLY<br>United States District Judge

Date: December 1, 2005